THE STATE OF OHIO, APPELLEE, *v.* MUSCATELLO,
APPELLANT.*

[Cite as State v. Muscatello (1977), 57 Ohio App. 2d 231.]

*Reporter's Note.  The judgment in this case was affirmed by the
Supreme Court of Ohio, in 55 Ohio St. 2d 201, and that case represents
the final authority upon all aspects of the cause.

(No. 35286—Decided July 7, 1977.)

*Mr. John T. Corrigan*, prosecuting attorney, for appellee.

*Mr. Gerald A. Messerman* and *Mr. Julian Cohen*, for appellant.

KRENZLER, J. The appellant, William Muscatello, was indicted by the Grand Jury of Cuyahoga County for aggravated murder in violation of R. C. 2903.01 on February 13, 1975. The indictment charged that the appellant, on or about February 2, 1975, unlawfully and purposely and with prior calculation and design, caused the death of Richard Rauscher. At his arraignment on February 28, 1975, the appellant entered a plea of not guilty to the indictment. Trial commenced before a jury on June 23, 1975, in the Common Pleas Court of Cuyahoga County.

It is undisputed that the appellant killed Richard Rauscher at the Party Time Lounge on February 2, 1975. The sole issue at trial was the circumstances under which the killing occurred. The state called four witnesses to testify to these circumstances and the following is a brief summary of their testimony.

A short time prior to the shooting, the victim, Richard Rauscher, and the appellant engaged in a fight during which

Rauscher knocked the appellant to the floor by striking him in the face. The appellant arose and left the tavern through the rear door stating, as he left, that he would be back. A short time later the appellant returned through the front door with a gun and fired a single shot which penetrated Rauscher's back causing his death.

The appellant then left immediately through the front door having said nothing prior to or after the shooting.

With regard to the time lapse between the appellant's departure from the rear door and his re-entry through the front door, three of the state's witnesses testified to times varying from five to fifteen minutes. A rebuttal witness, called by the state testified that appellant returned "A little while later" and "a short time later." The appellant, on cross-examination, sought to determine what the witness meant by the terms "a little while later" and "a short time later" but objections to the questions were sustained by the court on the ground that the questions were beyond the scope of direct examination.

Witnesses called by the defense offered the following testimony. The appellant and Richard Rauscher had been close friends for approximately fifteen years but because of a fight between Rauscher's brother, Steve, and the appellant's brother, Donald, on October 31, 1974, ill-will arose between Rauscher and the appellant which developed into an on-going feud. Witnesses testified that Rauscher threatened to kill the appellant and because of these threats the appellant's life style changed dramatically and he became nervous and upset. There was testimony that he terminated all social activities and kept himself and his wife and children close to home, that he took tranquilizers, that he traveled about in disguises, that he lost weight and that he was hospitalized for a nervous condition in November, 1974.

Witnesses also testified that the appellant and members of his family received telephone threats on his life and that on January 9, 1975, the appellant was shot in the leg in his home by an unknown assailant.

As to the events surrounding the shooting of Rauscher, the appellant testified that he went to the Party Time Lounge on February 2, 1975, for the purpose of confronting Carl Orzech whom the appellant believed to be responsible for creating his problems with Rauscher. The appellant stated that he and Orzech fought and that after Orzech had thrown the appellant to the floor, Rauscher entered the room, the appellant arose and Rauscher hit him in the face, throwing him to the floor again. According to the appellant's testimony he then left the lounge, got into his car and began to drive away when his cousin whistled to him. His cousin got into the car and had a gun in his hand. The appellant testified that while in a daze from the previous fight, he took the gun from his cousin, went back into the bar and shot Rauscher. A witness for the defense testified that the time lapse between the appellant's exit and his re-entry was two minutes.

In his charge to the jury the trial judge instructed on the offenses of aggravated murder, R. C. 2903.01; murder, R. C. 2903.02; and voluntary manslaughter, R. C. 2903.03. The instructions, in relevant part, were as follows:

"Now, ladies and gentlemen, the Defendant, William C. Muscatello, was charged with the crime of aggravated murder. Aggravated murder is the killing of another purposely and with prior calculation and design. Before you can find the Defendant guilty of aggravated murder, you must first find beyond a reasonable doubt: No. 1, that Richard Rauscher was a living person and that his death was caused by the Defendant, William C. Muscatello, in Cuyahoga County, Ohio, on or about the 2nd day of February, 1975, and,

"No. 2, that the killing was done purposely, and,

"No. 3, that the killing was done with prior calculation and design.

"* * *

"Prior calculation and design means that the purpose to kill was reached by a definite process of reasoning in advance of the killing, which process of reasoning must have included a murder plan involving studied consideration,

the method and the instrument with which to kill another.

"No definite period of time must elapse, and no particular amount of consideration must be given to the prior calculation and design to kill. Acting on the spur of the moment or after a momentary consideration of the purpose to kill is not sufficient to constitute the crime—excuse me—to constitute the kind of prior calculation and design required for aggravated murder.

"If you find that the Defendant, William C. Muscatello, actually formed a purpose to kill and that this purpose was arrived at with calculation and design before he performed the act, that is sufficient for this element of the crime.

"If you find that the State proved beyond a reasonable doubt all of the essential elements of aggravated murder, your verdict must be guilty of that crime, and in that event you will not consider any lesser included offense.

"If you find that the State failed to prove prior calculation and design, you must find the Defendant not guilty of aggravated murder, and then you will proceed with your deliberations and decide whether the State has proved beyond a reasonable doubt the elements of the lesser crime of murder.

"The crime of murder is distinguished from aggravated murder by the failure to prove the existence of prior calculation and design. To constitute murder, it must be established that Richard Rauscher was killed by the Defendant in Cuyahoga County, Ohio, on or about the 2nd day of February, 1975, and that there was a purpose to kill the deceased existing in the mind of the Defendant at the time of the act. The Court has previously defined the term 'purpose,' for you.

"If you find that the State proved beyond a reasonable doubt all of the essential elements of the lesser crime of murder, your verdict must be guilty of murder, and in that event you must not consider any lesser included offense.

"If you find that the State failed to prove any one of the essential elements of the crime of murder, you must

find the Defendant not guilty of murder, and you will proceed with your deliberation and decide whether the State has proved beyond a reasonable doubt the elements of the lesser crime of voluntary manslaughter.

"Voluntary manslaughter is knowingly causing the death of another while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite the Defendant into using deadly force.

"Before you can find the Defendant guilty of voluntary manslaughter, you must find beyond a reasonable doubt:

"No. 1, that Richard Rauscher was a living person and his death was caused by the Defendant, William C. Muscatello, in Cuyahoga County, Ohio, on or about the 2nd day of February, 1975, and that the killing was done knowingly, and that the act causing the death of the victim was performed while the Defendant, William C. Muscatello, was under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force.

"* **

"The emotional stress or condition must be extreme; that is, it must be great in nature and intensity, and it must exist at the time of the act or acts that caused the death of Richard Rauscher. However, to reduce a purposeful murder to voluntary manslaughter, the extreme emotional stress must be brought on by serious provocation.

"Provocation to be serious must be reasonably sufficient to bring on an extreme emotional stress, and the provocation must be reasonably sufficient to incite or to arouse the Defendant into using deadly force.

"In determining whether the provocation was reasonably sufficient to incite the Defendant into using deadly force, you must consider the emotional and mental state of this Defendant and the conditions and the circumstances that surrounded him at that time.

"When a person knowingly kills another under extreme emotional stress brought on by serious provocation reasonably sufficient to cause him to use deadly force to

kill another, such a killing is voluntary manslaughter."

The judge also instructed that statements made by defense counsel and the prosecutor in final or closing arguments were not to be considered as evidence. The court further instructed that answers ordered stricken from the record were to be excluded from consideration and that the jury was not to engage in speculation as to what answers might have been to questions to which objections were raised and sustained.

During deliberations, the jury returned to court on two occasions with three questions. The first requested that the elements of aggravated murder, murder and manslaughter be restated. The third question asked for a redefinition of prior calculation and design. In response to these two questions the court defined the three offenses and prior calculation and design, as it had done previously in the original instructions.

The second question inquired whether the jury must first reach a *unanimous* decision of not guilty of aggravated murder before considering the lesser charge of murder in response to which the court replied as follows:

"The Court: The Court is going to answer your first question by re-reading and reexplaining the verdict forms, and I think with a close listening of the reading of the verdict forms, it will answer your first question of whether or not, 'Do we need a unanimous decision of not guilty of aggravated murder before considering the lesser charge of murder?'

"The first form—excuse me, the first verdict form which was given to you, omitting the caption, reads:

" 'We the jury in this case being duly impaneled and sworn, do find the Defendant, William C. Muscatello, guilty of aggravated murder, Revised Code 2903.01-A as charged in the indictment.'

"If the Prosecuting Attorney has presented evidence to you as members of this jury, that convinces you beyond a reasonable doubt of all the elements contained in the crime of aggravated murder, and if all of you agree, then you would sign that verdict form.

"The second form reads:

" 'We the jury in this case being duly impaneled and sworn, do find the Defendant, William C. Muscatello, not guilty of aggravated murder, but guilty of the lesser included offense of murder, Revised Code 2903.02.'

"If the Prosecution has failed to convince you beyond a reasonable doubt by evidence of all of the elements of aggravated murder, then you will consider the crime of murder as a lesser included offense. Murder, a lesser included offense, is the same as aggravated murder, but without the element of prior calculation and design.

"The third form of verdict is that: 'We, the jury, being duly impaneled and sworn, do find the Defendant, William C. Muscatello, not guilty of murder, but guilty of the lesser included offense of voluntary manslaughter.'

"If you can recall this morning, when I read the elements of the crime of manslaughter, it was a lesser included offense of the crime of murder.

"The fourth form of verdict is: 'We, the jury in this case, being duly impaneled and sworn, do find the Defendant, William C. Muscatello, not guilty of aggravated murder as charged in the indictment.' That is, the State failed to prove aggravated murder, murder, or manslaughter, then your verdict, of course, would be not guilty."

Defense counsel then made the following requests for jury instructions:

"Mr. Cohen: Your Honor, I would request the Court to instruct the jury that a purposeful murder, even if the elements of murder are proven, but that the purposeful murder was the result of * * * extreme emotional stress brought about by serious provocation. Then, if they find that is the case, then it reduces a purposeful murder to voluntary manslaughter.

"The Court: The request is denied.

"Mr. Cohen: Further, your Honor, I feel that the jury should be instructed that they need not unanimously agree on a not guilty of aggravated murder before they consider the crime of murder.

"The Court: I think the verdict form reads very simply

that, 'We the jury, being duly impaneled and sworn, do find the Defendant not guilty of aggravated murder, but guilty of the lesser included offense of murder.' *I think the law contemplates the fact that that's one of unanimity in order to go to the lesser offense.* There has to be a definite determination of guilt or innocence on the major charge before they can go to the second lessor offense of murder." (Emphasis added.)

A verdict of guilty of aggravated murder was returned by the jury on June 28, 1975, and the appellant was sentenced to imprisonment for fifteen years to life. A motion for a new trial was filed in the appellant's behalf on July 11, 1975, which, after hearing, was denied on August 11, 1975. A timely notice of appeal was filed on September 3, 1975, and the appellant presents three assignments of error for our review.

## I.

The first assignment of error encompasses three sub-assignments of error that will be discussed separately as errors I-A, I-B and I-C.

"*First Assignment of Error*:

"Upon trial of an indictment charging aggravated murder, the trial court, by requiring the jury to mitigate the degree of offense involved only upon proof beyond a reasonable doubt that the accused had acted under extreme emotional stress brought about by serious provocation and by barring consideration of the lesser included offense of manslaughter absent a unanimous jury determination that the elements of aggravated murder were not established, denied appellant a fair trial in violation of the due process requirements of the Fourteenth Amendment.

"A. The Charge of the Court and the Statutory Provisions Pursuant to Which That Charge was Drawn, By Permitting Conviction Upon a Lesser Degree of Homicide Only Upon Proof Beyond a Reasonable Doubt That a Mitigating Circumstance was Present, Violate Due Process of Law.

"B. The Charge of the Court and the Statutes Pursuant to Which that Charge was Drawn, By Barring Consideration of the Crime of Manslaughter Absent a Unani-

mous Determination That the Elements of Aggravated Murder Had Not Been Established, Unconstitutionally Precluded Consideration of Those Mitigating Circumstances Which Reduce a Homicide From Murder to the First Degree Felony of Manslaughter.

"C. The Court Erroneously Refused to Charge That The Emotional Stress Contemplated as a Mitigating Factor Need Not be of Sudden Origin."

I-A. In assignment of error I-A, the appellant maintains that the trial judge's charge to the jury on the offense of voluntary manslaughter denied him a fair trial in violation of the due process guarantees of the Fourteenth Amendment of the United States Constitution.

The appellant argues that the instruction which allowed the jury to reduce his conviction to voluntary manslaughter only if they found beyond a reasonable doubt that he had acted under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force unconstitutionally placed upon him the burden of proving the mitigating circumstance of emotional stress beyond a reasonable doubt in violation of the United States Supreme Court decision in *Mullaney* v. *Wilbur* (1975), 421 U. S. 684.

Before addressing ourselves to the merits of this assignment of error, however, we must first determine whether the error was properly preserved for appellate review. The state argues that because the appellant did not timely object to this instruction at the trial, Rule 30 of the Ohio Rules of Criminal Procedure prohibits this court from reversing the appellant's conviction on the basis of this assignment of error. At the time that trial began, however, the United States Supreme Court had held in *Mullaney* v. *Wilbur, supra,* that the practice of placing upon a defendant the burden of proving the mitigating circumstance of provocation by a preponderance of the evidence was constitutionally invalid. We conclude, therefore, that since the first assignment of error has constitutional implications substantial rights of the appellant are affected and this error is a proper subject for our review as plain error under Criminal Rule 52.

We may now consider the merits of assignment of error I-A. This assignment of error is well taken.

A comparison of the crime of homicide under former Ohio law to current law will be helpful in understanding the issues involved in this assignment of error and the basis of our conclusions.

Homicide under the former Ohio Criminal Code was classified into three categories, first and second degree murder and manslaughter in the first degree. Murder in the first degree was defined as "no person shall purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery, or burglary, kill another."[1] The penalty for first degree murder was death or life imprisonment.

Murder in the second degree was defined as "no person shall purposely and maliciously kill another" and was punishable by life imprisonment.[2] Manslaughter in the first degree was statutorily defined as "no person shall unlawfully kill another" and carried a penalty of two to fifteen years.[3] By case law this offense was divided into voluntary manslaughter defined as "an intentional killing upon a sudden quarrel or sudden heat without malice,"[4] and involuntary manslaughter defined as the unintentional killing of another while the slayer is in the commission of an unlawful act.[5]

The criminal code adopted effective January 1, 1974, contains seven categories of homicide: aggravated murder, murder, voluntary manslaughter, involuntary manslaught-

---

[1]R. C. 2901.01 repealed Jan. 1, 1974. Murder in the first degree under former Ohio law also included murder by obstructing or injuring a railroad, R. C. 2901.02 repealed Jan. 1, 1974; the killing of a guard by a prisoner, R. C. 2901.03 repealed Jan. 1, 1974; and the killing of a police officer, R. C. 2901.04 repealed January 1, 1974.

[2]R. C. 2901.05 repealed Jan. 1, 1974.

[3]R. C. 2901.06 repealed Jan. 1, 1974.

[4]*Black* v. *State* (1921), 103 Ohio St. 434; *State* v. *Schaeffer* (1917), 96 Ohio St. 215; *Davis* v. *State* (1874), 25 Ohio St. 369.

[5]*State* v. *O'Mara* (1922), 105 Ohio St. 94; *Black* v. *State* (1921), 103 Ohio St. 434; *Jackson* v. *State* (1920), 101 Ohio St. 152; *State* v. *Schaeffer* (1917), 96 Ohio St. 215.

er, negligent homicide, aggravated vehicular homicide, and vehicular homicide.[6] Three of these offenses are relevant to the case on appeal. The first is aggravated murder which is defined as:

"(A) No person shall purposely, and with prior calculation and design, cause the death of another.

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape."[7]

The penalty for aggravated murder is death or life imprisonment.[8] The second homicide offense with which we are presently concerned is murder, defined as "no person shall purposely cause the death of another"[9] punishable by imprisonment for an indefinite term of fifteen years to life.[10] The third offense involved in the present case is voluntary manslaughter defined as "no person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another.[11] This offense is punishable by imprisonment for four to twenty-five years.[12]

There are several distinctions between the former law and the present Ohio homicide law that are relevant to this case. The first is that voluntary manslaughter and involuntary manslaughter are now proscribed by separate sections of the criminal code while under the former law the offense of manslaughter was contained in a single statutory section which referred to the general offense of manslaughter, divided by case law into voluntary and involuntary manslaughter.

[6] R. C. 2903.01-.07.
[7] R. C. 2903.01.
[8] R. C. 2929.02(A).
[9] R. C. 2903.02.
[10] R. C. 2929.02(B).
[11] R. C. 2903.03(A).
[12] R. C. 2903.03(B); R. C. 2929.11(B)(1).

A second distinction is that the former law required that the homicide be intentional whereas the new voluntary manslaughter section requires that it be committed knowingly.

A third difference is that the former offense of voluntary manslaughter pertained only to killings done upon a sudden quarrel or in the heat of passion whereas the new law includes such killings and also those committed under extreme emotional stress built up over a period of time.[13]

The fourth relevant distinction is that the offense of voluntary manslaughter under the new code includes the language "while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force." The inclusion of this language suggests that the mitigating circumstance of emotional stress or provocation is now an element of the offense of voluntary manslaughter. Undoubtedly, it was because emotional stress appears to be an element of the offense, that the trial judge charged that a verdict of guilty of voluntary manslaughter would be proper only if the jury found that the circumstance of emotional stress had been proved beyond a reasonable doubt. Such an instruction seemingly would be mandated by the constitutional requirement that all elements of a crime must be proved beyond a reasonable doubt to sustain a conviction against an accused. *In re Winship* (1972), 397 U. S. 358.

The appellant challenges this instruction, however, because it places upon him the burden of proving beyond a reasonable doubt that he acted under extreme emotional stress when he killed Richard Rauscher.

The United States Supreme Court has recognized that preventing and dealing with crime is much more the business of the States than it is of the Federal Government. *Patterson* v. *New York* (1977), 432 U. S. 197, 286; *Irvine* v. *California* (1954), 347 U. S. 128, 134. Further, it is normally within the power of the States to

---

[13]*See* our discussion, *infra*, in connection with assignment of error I-C.

determine the substantive elements of crimes and to regulate procedures under which its criminal laws are carried out including the burden of producing evidence and the burden of persuasion. Such procedures are subject to constitutional scrutiny but will not be held violative of the Due Process Clause of the fourteenth amendment to the United States Constitution unless they offend a fundamental principle of justice. *Patterson* v. *New York, supra.*

It is a well established principle of constitutional law that the state must maintain the burden of proving beyond a reasonable doubt each and every element of the offense charged and that this burden cannot be placed upon the defendant. *In re Winship, supra.*

With regard to affirmative defenses and mitigating factors, however, the states have several options with regard to placing the burden of proof that will withstand constitutional challenge. First, they can place the burden on the prosecution to negate or to prove the absence of an affirmative defense or emotional stress beyond a reasonable doubt. Second, they can classify emotional stress as an affirmative defense and expressly provide that the defendant shall bear the burden of proving these affirmative defenses by a preponderance of the evidence. This is the approach taken by New York[14] and recently upheld by the United States Supreme Court in *Patterson* v. *New York, supra.*

Third, the states have the alternative of placing on the defendant only the burden of producing sufficient evidence on the issues of emotional stress or other affirmative defenses to raise a reasonable doubt as to guilt, leaving to the state its traditional burden of proving beyond a reasonable doubt all of the elements of the crime charged. *E. g. State* v. *Robinson* (1976), 47 Ohio St. 2d 103, interpreting R. C. 2901.05. This does not mean that the defendant must introduce such evidence in every case because in some instances the prosecution might present sufficient evidence in support of the defendant's position on these

---

[14]N. Y. Penal Law Sec. 125.25, Sec. 125.20 (McKinney).

issues which would generate a jury question. This would satisfy the defendant's burden of producing some evidence.

A state may not, however, draft its homicide statutes in such a manner as to place upon the defendant the burden of proving or disproving an element of the offense charged. This approach was rejected in *Mullaney* v. *Wilbur, supra*, where the Supreme Court declared unconstitutional a Maine law which placed upon the defendant the burden of proving by a preponderance of the evidence the mitigating factor of provocation in order to rebut a statutory presumption that an intentional and unlawful homicide was committed with malice aforethought. The Court held that placing the burden on the defendant to disprove this element of the crime was contrary to the spirit and substance of *In re Winship*. *Mullaney* v. *Wilbur, supra* at 699-701.

In answering the appellant's charge in the present case that the trial court's instruction to the jury unconstitutionally required him to prove emotional stress beyond a reasonable doubt we must resolve three issues. The first is whether under Ohio law emotional stress is an element of the offense of voluntary manslaughter which the state must prove beyond a reasonable doubt under the requirements of *In re Winship*. If emotional stress is not an element of the offense but is a mitigating circumstance, then the second question to be answered is what burden if any is placed upon the defendant under Ohio law with regard to proving this factor.

The third issue is whether or not Ohio law, in this regard, meets constitutional requirements.

We conclude that emotional stress is a mitigating circumstance for which the defendant in a criminal prosecution bears the burden of producing some evidence to be entitled to a jury instruction on voluntary manslaughter, R. C. 2903.03, and is not an element of the offense which the state must prove beyond a reasonable doubt.

This conclusion is based on three considerations. In the first place, under former Ohio criminal law, the cir-

cumstance of provocation was not contained within the statutory definition of the crime of manslaughter. It was determined by judicial construction that one who killed another unlawfully could be convicted of voluntary manslaughter if the killing was done upon a sudden quarrel without malice.[15] It is reasonable to conclude, therefore, that under former Ohio criminal law provocation was not considered an element of the offense but was a mitigating circumstance that might reduce a homicide conviction from murder to manslaughter.

In the second place, construing emotional stress as an element of the offense of voluntary manslaughter places the prosecution in the inconsistent position of having to disprove an element of a lesser offense in order to obtain a conviction of a greater offense, while at the same time, under the requirements of *In Re Winship,* of having the burden of proving beyond a reasonable doubt all of the elements of the lesser offense in order to sustain a conviction on that lesser offense should the jury find the defendant not guilty of the greater offense. In a case such as the present one, where the appellant was charged with aggravated murder, the state will actually seek to disprove that the appellant acted under emotional stress in order to obtain a conviction for aggravated murder. By so doing, however, the state abrogates its burden of proving an element of voluntary manslaughter, a lesser offense upon which the jury also properly might be charged.

In the third place, if emotional stress were determined to be an element of the offense of voluntary manslaughter, that offense would no longer be a lesser included offense of aggravated murder, R. C. 2903.01 and murder, R. C. 2903.02.

The Ohio Supreme Court has held that "if all the elements of a separate offense are present with others in an offense charged in an indictment, such separate offense is a lesser included offense; or where all the elements of an offense are included among the elements of a charged

---

[15]*See* note 4, *supra.*

offense, the former is a lesser included offense." *State* v. *Kuchmak* (1953), 159 Ohio St. 363, 366.

As we noted above, the offense of aggravated murder under present Ohio law contains the elements, (1) purposely, (2) with prior calculation and design, and (3) cause the death of another. The crime of murder contains the elements, (1) purposely, and (2) cause the death of another. Under the rule of *State* v. *Kuchmak, supra,* then, the offense of murder is clearly a lesser included offense of the crime of aggravated murder.

The offense of voluntary manslaughter, however, at first blush, seems to contain three elements, (1) knowingly, (2) cause the death of another, and (3) while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite one into using deadly force. If we construe the circumstance of emotional stress as an element of the offense, then, under the rule set forth in *State* v. *Kuchmak, supra,* voluntary manslaughter could not be a lesser included offense of aggravated murder or murder since it would be deemed to contain an additional element not contained within the definition of the latter two crimes. Yet, it is clear that this offense continues to carry a lesser penalty and historically has been considered a lesser included offense of the greater crime of murder.[16]

We conclude, therefore, that the language "extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force," contained in the voluntary manslaughter statute, R. C. 2903.03, is not an element of the offense, but is a mitigating circumstance which where properly raised by sufficient evidence can reduce an indictment for aggravated murder or murder to a conviction for voluntary manslaughter. Accordingly, we also conclude that voluntary manslaughter, R. C. 2903.03, is a lesser included offense of aggravated

---

[16]*See State* v. *Fox* (1972), 31 Ohio St. 2d 58, *State* v. *Muskus* (1952), 158 Ohio St. 276; *Bandy* v. *State* (1921), 102 Ohio St. 384; *State* v. *Taylor* (1957), 20 Ohio Ops. 2d 386, all construing the former manslaughter statute, R. C. 2901.06, as a lesser included offense of first and second degree murder.

murder, R. C. 2903.01, and murder, R. C. 2903.02.[17]

The next issue to be resolved is to determine which of the three alternatives, discussed above, has been adopted by Ohio wih regard to the burden of proof on emotional stress. We must look to R. C. 2901.05 which provides in relevant part:

"(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with the evidence of an affirmative defense is upon the accused.

" * * * *

"(C) As used in this section, an 'affirmative defense' is either of the following:

"(1) A defense expressly designated as affirmative;

"(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.

" * * * * "

Emotional stress as a mitigating circumstance is similar to an affirmative defense since it operates as a defense to the higher offenses of aggravated murder and murder. As such, the law in Ohio applicable to affirmative defenses is also clearly applicable to the mitigating factor of emotional stress. In interpreting R. C. 2901.05, the Ohio Supreme Court has held that in a criminal case involving the affirmative defense of self-defense, the defendant has only the burden of going forward with evidence of a nature and quality sufficient to raise that defense, and does not have the burden of establishing such defense by a preponderance of the evidence. *State* v. *Robinson, supra.*

---

[17]*See State* v. *Butler* (1974), 44 Ohio App. 2d 177, wherein the Court of Appeals for Allen County held that the crime of aggravated assault as defined by R. C. 2903.12, is a lesser included offense of the crime of felonious assault as defined by R. C. 2903.11. The court reached this decision by concluding that the phrase contained within the aggravated assault statute relating to extreme emotional stress brought on by serious provocation, is not an element of the offense which the state must prove beyond a reasonable doubt.

We also note that nowhere in its criminal code does Ohio adopt either of the other two alternatives. There is no express statutory provision requiring the prosecution to negate affirmative defenses or emotional stress by proof beyond a reasonable doubt. It provides only that the state must prove the elements of the offense beyond a reasonable doubt. R. C. 2901.05(A). Nor does the code expressly place the burden upon the defendant of proving affirmative defenses or mitigating circumstances by a preponderance of the evidence.[18] Absent such express provisions and in view of R. C. 2901.05, it is apparent that Ohio has adopted the third alternative regarding affirmative defenses and the mitigating factor of emotional stress. We conclude, then, that with regard to voluntary manslaughter, R. C. 2903.03, the defendant in a criminal case bears only the burden of producing some evidence of emotional stress and does not have the burden of establishing such mitigating circumstance by a preponderance of the evidence or beyond a reasonable doubt.

Clearly, such a burden is constitutional because it is considerably less of a burden than that upheld in *Patterson* v. *New York, supra.*

We must now determine whether or not the trial court's instruction in the present case, that before the jury could find the appellant guilty of the lesser offense of voluntary manslaughter it had to find beyond a reasonable doubt that he had acted under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force when he killed Richard Rauscher, was prejudicial error.

On the surface, this seems to place no burden upon the

---

[18]It should be noted that effective November 1, 1978 R. C. 2901.05(A) has been amended to provide: "(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof FOR ALL ELEMENTS OF THE OFFENSE is upon the prosecution. The burden of going forward with the evidence of an affirmative defense AND THE BURDEN OF PROOF, BY A PREPONDERANCE OF THE EVIDENCE, FOR AN AFFIRMATIVE DEFENSE, is upon the accused."

appellant to prove anything. The requirement that emotional stress be proved beyond a reasonable doubt by anyone, before the jury may reduce a homicide charge to voluntary manslaughter, in effect, however, places that burden of proof upon the defendant even though the instructions to the jury do not specifically impose that burden upon him. In a case such as the present one, where the defendant is originally charged with aggravated murder or murder the state will strive to prove the elements of the highest offense and will seek to disprove the mitigating circumstance of emotional stress. Since it is the defendant who will benefit from the establishment of that mitigating circumstance, by receiving a lesser punishment, only he will endeavor to convince the trier of fact that he acted under the influence of that circumstance when he committed the homicide. Any burden of proof imposed relative to this circumstance will in reality fall upon the defendant. The effect of the instruction given in the present case is no different than if the jury had been instructed that the appellant had the burden of proving emotional stress beyond a reasonable doubt.

Therefore, since, as we indicated above, the law in Ohio with regard to voluntary manslaughter is that the defendant has only the burden of producing evidence as to emotional stress, the trial court's instruction to the jury in the present case constituted prejudicial error.

The proper procedure for the trial court to follow in instructing the jury with regard to emotional stress is similar to that discussed by the Ohio Supreme Court in *State* v. *Robinson*,[19] for instructing a jury on the issue of self-defense. Once a trial court concludes that sufficient evidence of the mitigating circumstance of emotional stress has been properly presented it need only instruct the jury as to emotional stress, including an instruction that a finding by the jury that the defendant acted under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force can

---

[19]*State* v. *Robinson* (1976), 47 Ohio St. 2d 103, 113.

mitigate a purposeful killing to voluntary manslaughter. Where the issue of the mitigating circumstance of emotional stress is not properly raised by sufficient evidence, however, an instruction on voluntary manslaughter would be improper. As the court noted in *State* v. *Robinson,* with regard to self-defense, the trial court will have no occasion to speak of burden of proof other than to explain the state's burden of proving guilt beyond a reasonable doubt. Assignment of error I-A is well taken.

*I-B.* In assignment of error I-B, the appellant maintains that the jury instructions which barred the jury from considering the lesser degree of homicide of voluntary manslaughter until it *unanimously* determined that the appellant was not guilty of aggravated murder and murder, unconstitutionally precluded the jury from any possible consideration of the mitigating circumstance of emotional stress.

There are two issues involved in this assignment of error. The first is whether the trial judge's instruction that required the jury to unanimously agree that the appellant was not guilty of a higher degree of homicide before it could consider his possible guilt of a lesser degree was improper.

This assignment of error is well taken as to this issue. It is not necessary that the jury unanimously agree that a defendant is not guilty of aggravated murder before considering the lesser charge of murder. Nor must they unanimously agree that the defendant is not guilty of aggravated murder and murder before considering the lesser charge of voluntary manslaughter where the issue of the lesser offenses is properly raised by the evidence.

The correct rule of law is that a jury must unanimously agree that a defendant is guilty of a particular offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense they may proceed to consider a lesser included offense upon which evidence has been presented.

We agree that the trial court erred in requiring a

unanimous determination that the appellant was not guilty of aggravated murder and murder before the jury could consider the lesser included offense of voluntary manslaughter.

The second issue involves the appellant's assertion that the admonition in the instruction that the jury could not consider a lesser degree of homicide once it had determined that the state had proved beyond a reasonable doubt all of the essential elements of a higher degree of homicide was improper. The appellant's position on this issue is not well taken.

The instruction which cautioned the jury not to go on to a consideration of a lesser included offense once guilt of a higher offense had been determined beyond a reasonable doubt does not in reality preclude consideration of the mitigating circumstance of emotional stress. At the point that the jury retires to deliberate the defendant's guilt, it has before it the entire charge of the trial court, including the definition and the elements of each offense upon which evidence has been presented, the definition of all defenses and mitigating circumstances upon which evidence has been presented and an explanation of the effect and inter-relationship of these offenses, defenses and mitigating circumstances. In addition, the jury will have been instructed that they may find the defendant guilty of a particular offense only if they find that the state has proved beyond a reasonable doubt each and every element of that offense.

Accordingly, when the jury begins its deliberation of the highest degree of the offense, it has before it for its consideration the evidence and instructions regarding emotional stress and its possible effect upon their final determination. It is presumed that at this point the jury knows and understands the law. In reality the jury will not consider each offense upon which it has been charged in isolation from the other offenses because it will be aware of the inter-relationship of the offenses to each other and the effect of a finding that the defendant acted under emotional stress. When a jury reaches a unanimous determination of

guilt to a higher degree of the offense, it can be assumed that they have considered and rejected evidence regarding any defenses or mitigating circumstances.

Therefore, the trial judge's instruction that required the jury to cease deliberation once it reached a unanimous determination that the state had proved beyond a reasonable doubt every element of a higher offense was proper. Because of the improper instruction requiring a unanimous determination of not guilty before considering a lesser included offense, assignment of error I-B is well taken.

## II.

### Second Assignment of Error

"By repeatedly propounding questions which implied the existence of highly prejudicial facts for which there was no factual predicate, by subsequently arguing the existence of the prejudicial facts implied in the questions in the absence of any testimony of record establishing those facts, and by asserting the existence of prior consistent statements by state witnesses concerning a critical issue at trial, knowing that such statements were not in evidence and, in fact, did not even exist, the prosecutor engaged in conduct which deprived appellant of a fair trial."

Assignment of error II relates to three questions propounded by the prosecutor to defense witnesses and five comments made by the prosecutor during closing argument. All of these questions and comments were pertinent to the crucial issue of the case of whether the appellant acted with prior calculation and design or acted under emotional stress when he shot Richard Rauscher.

Objections to some of the questions and comments were sustained. To others there were no objections and to some, objections were overruled.

Because these questions and comments were not based upon testimony or other evidence in the record they were improper. Individually and standing alone, no one of these questions or comments was sufficiently prejudicial to warrant a reversal of the appellant's conviction. The cum-

ulative effect, however, of all eight questions and comments was sufficiently prejudicial to have denied the appellant a fair trial. The judge's general instruction as to what properly constitutes evidence and his having sustained some objections to the questions and comments, did not cure the prejudicial effect of these improper remarks. The second assignment of error is well taken.

III.

*Third Assignment of Error:*

"The trial court improperly limited the scope of cross-examination concerning an issue critical to the determination of guilt or innocence."

In assignment of error III, the appellant maintains that the trial judge committed reversible error by improperly limiting the appellant's cross-examination of a witness. This assignment of error is well taken.

The witness, James Clark, was called by the state for the purpose of testifying to the fact that the appellant, upon leaving the bar after the fight with the victim, advised the witness to quit his job at the bar because, he, the appellant would be back. As part of this testimony, Mr. Clark stated the following:

By Ms. Washington:

"Q. And, sir, did you see the Defendant there that evening?

"A. Yes.

"Q. Would you please tell the Court what happened?

"A. Well—what do you mean by that, what happened?

"Q. Would you tell the circumstances surrounding your seeing the Defendant that evening—that morning.

"A. Me and Billy walked out the back door, and he hopped into his Chevy and left, and came back a little while later."

On cross-examination, Mr. Clark repeated that the appellant returned within "a short time." Defense counsel attempted by several questions to determine what Mr.

Clark meant by "a little while later" and a "short time" but was precluded from developing this testimony by the trial judge who repeatedly sustained the prosecutor's objections to this line of questioning.

The law in Ohio regarding the scope of cross-examination provides that "a witness may be properly cross-examined as to all relevant facts developed by the examination in chief and as to such other relevant facts as the party calling such witness could have inquired in order to make out his case." *Smith* v. *State* (1932), 125 Ohio St. 137, 148; see *Legg* v. *Drake* (1853), 1 Ohio St. 286; *The Ohio & Western Pa. Dock Co.* v. *Trapnell* (1912), 23 Ohio C. C. N. S. 408; *State* v. *Rivers* (1977), 50 Ohio App. 2d 129; *State* v. *Miracle* (1973), 33 Ohio App. 2d 289.

We have carefully reviewed the record and find that the subject area of the questions asked by the appellant on cross-examination were introduced by the state on direct examination. The witness was asked to tell what had happened when the appellant left the Party Time Lounge and he responded that the appellant "hopped into his Chevy and left, and came back a little while later." The appellant was entitled to explore what was meant by a "little while later." Furthermore, the time lapse between the appellant's exit from the bar and his return had been introduced previously by the state in its direct examination of three other witnesses.

We also conclude that the time-lapse issue was a relevant fact about which the state could properly inquire in order to establish its case against the appellant for aggravated murder. Under an indictment for this offense the state would be interested in showing that the lapse of time was sufficiently great to permit an inference to be drawn by the jury that the killing was the result of the appellant's prior calculation and design rather than serious emotional stress brought on by provocation. The question directed to the witness as to what he meant by a "short time" or a "little while" clearly represents a subject area into which the state could have inquired since it was perti-

nent to the determination of the degree of homicide for which the appellant could be convicted.

Furthermore, such testimony should not be excluded merely because it tends to establish the appellant's case based on a theory of provocation and emotional stress. *See Cities Service Oil Co.* v. *Burkett* (1964), 176 Ohio St. 449. The examination of Mr. Clark occurred after the defense had already presented its case. Therefore, any evidence elicited from Mr. Clark on cross-examination that supported the case for the defense was not out of time.

The third assignment of error is well taken.

*Judgment reversed.*

PARRINO and STILLMAN, JJ., concur.