This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Larry Mathes, has appealed from a judgment of the Summit County Court of Common Pleas that convicted him of murder and sentenced him to fifteen years to life in prison. This Court affirms.
 I.
During the early morning hours of June 3, 1999, Akron Police received a 911 emergency call from an apartment at 509 Crosby Street in Akron. The caller, a female, told the dispatcher that her friend had been stabbed and further stated that "he stabbed him." The dispatcher asked her, "Is the person who stabbed him in the apartment?" The caller responded, "No, but it's a very long explanation."
When police arrived at the scene, they found a man lying on the floor, unconscious and not breathing. The victim, Clifford Stanfield, later died from his injuries. At the time the police arrived, there were two other people in the apartment, Mathes and his girlfriend, Michelle Wohlford. Both Mathes and Wohlford had blood on their clothes. When the police asked Mathes what had happened, he responded, "We don't know." Mathes later told them, however, that "I think I know what happened. * * * It was a fight. Jack. It was Jack." Mathes then warned them that they should be careful because if Jack came back, there would be trouble. Although the officers believed at first that Mathes was referring to some third person, Mathes explained that "Jack" or "Jack the Ripper" was one of his other personalities. Mathes claimed that he suffered from dissociative disorder, more commonly known as multiple personality disorder.
Mathes entered a plea of not guilty by reason of insanity. Consequently, the trial court ordered that the Court Psycho-Diagnostic Clinic perform an evaluation of Mathes' mental condition. Prior to trial, however, Mathes withdrew his insanity plea. Following a jury trial, Mathes was convicted of one count of murder. Mathes has appealed and raises five assignments of error.
 II.
Mathes raised no objections at trial to any of the errors alleged in his first four assignments of error. Consequently, this Court would normally confine its review to the plain error standard of Crim.R. 52(B). See State v. Lundgren (1996), 73 Ohio St.3d 474, 482, 487. Because Mathes also alleges that his trial counsel erred by failing to timely assert those alleged errors, however, this Court will not so limit its review.
ASSIGNMENT OF ERROR I
 It was error for the trial court to admit the opinion of witnesses who had not first been qualified as an expert.
 Mathes asserts through his first assignment of error that the trial court erred by permitting the state to present the testimony of two expert witnesses without first determining whether they were qualified to testify. The witnesses at issue were Mary Myers and Dr. Yossef Ben-Porath, each of whom testified about Mathes' alleged mental illness.
 Evid.R. 702(B) provides that a witness may qualify as an expert "byspecialized knowledge, skill, experience, training, or education regardingthe subject matter of the testimony[.]" To qualify as an "expert" under Evid.R. 702, "[n]either special education nor certification is necessary[.]" State v. Baston (1999), 85 Ohio St.3d 418, 423, citingState v. Boston (1989), 46 Ohio St.3d 108, 119. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge she possesses will aid the trier-of-fact in performing its fact-finding function." Baston, supra, citing State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 191. The trial court's ruling as to whether a witness is qualified to testify as an expert will not be reversed absent a clear abuse of discretion. Vinci v. Ceraolo (1992),79 Ohio App.3d 640, 646. An "abuse of discretion" is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Mathes contends that Mary Myers, a lieutenant with the Akron Police Department, was not qualified to give her opinion that Mathes did not suffer from dissociative identity disorder. This Court disagrees. Although Myers testified that she had worked for the Akron Police Department for over twenty-three years, she also explained that she has a master's degree and a doctorate in counseling and that she is a licensed social worker, a licensed practical clinical psychologist, and a licensed psychologist. She indicated that she has a small private counseling practice in addition to her police work and that she does "a lot of diagnosis and treatment of mental and emotional disorders." She further testified that she has "always been interested in the multiple personalities" and that she has made efforts to educate herself further on that issue. Given Myers' specialized knowledge, experience, andeducation, the trial court did not abuse its discretion by permitting herto testify about Mathes' alleged psychological disorder.
Mathes further contends that Myers was not qualified to testify as an expert because her purpose in interviewing him was to obtain a statement from him, not to treat him. Mathes has cited no authority, nor is this Court aware of any, to even suggest that Myers' purpose in speaking with Mathes had any bearing on the admissibility of her testimony. Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."
Myers explained that the factual basis for her opinion that Mathes did not suffer from dissociative identity disorder was her own observation of him. She testified that, during an interview that lasted approximately seven minutes, Mathes appeared to exhibit several different personalities. At first, Mathes portrayed distinct personality traits for each. By the end of the brief interview, however, Mathes' personalities were blending together and that "confirmed [Myers'] belief that he was not a true multiple personality[.]" Myers explained that if Mathes had truly been shifting from one personality to another, he would lose track of the conversation because each personality would need a few moments to catch up. She explained that Mathes, however, answered questions "as if he was the same person sitting in the room the entire time, he didn't lose track of anything." Myers also explained that she and the other detective who questioned Mathes were able to summon his different personalities by merely asking them to appear, which is not indicative of a true dissociative disorder.
Dr. Yossef Ben-Porath also testified about his qualifications to testify as an expert about Mathes' alleged mental disorder. Dr. Ben-Porath explained that he has a doctorate in clinical psychology and that he had been licensed by the state of Ohio for nine and one-half years. He explained that a clinical psychologist has expertise in abnormal psychology and that his particular expertise is in the assessment and diagnosis of psychological disorders. During his nine and one-half years of practice, he has participated in the diagnosis and assessment of well over 2,000 people. Dr. Ben-Porath further explained the process by which he evaluates an individual for a psychological disorder. As Dr. Ben-Porath demonstrated that he possessed specializedknowledge, skill, experience, and education to testify about Mathes' alleged disorder, the trial court did not abuse its discretion by allowing him to testify on that topic. The first assignment of error is overruled.
ASSIGNMENT OF ERROR II
 The trial court erred in charging the jury that in order for the jury to consider a lesser included offense that the jury must first acquit the appellant of the principle charge.
 Mathes contends that the trial court's instructions to the jury failed to comply with the holding of State v. Thomas (1988), 40 Ohio St.3d 213, paragraph three of the syllabus, which provides:
 A jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense. (State v. Muscatello [1977], 57 Ohio App.2d 231, 11 O.O. 3d 320, 387 N.E.2d 627, paragraph three of the syllabus, adopted.)
 Mathes specifically focuses on the court's holding that "[t]he jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense."
Despite Mathes' argument to the contrary, and the state's concession that the court committed error, the trial court's instruction was not in violation of the Thomas holding. The trial court instructed the jury, in relevant part:
 [I]f you find the State failed to prove beyond a reasonable doubt all the essential elements of murder, then your verdict would be not guilty of that offense, and in that event you would continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser included offense of involuntary manslaughter.
* * *
 [I]f you have found that the State of Ohio proved beyond a reasonable doubt all the essential elements of involuntary manslaughter, then you would find the defendant guilty of involuntary manslaughter. And that — of course, that is if you find they did not prove the initial offense in the indictment, murder, and have gone onto that consideration.
 Mathes takes issue with the trial court instructing the jury that it should consider the lesser included offense "if you find that the state failed to prove beyond a reasonable doubt all the essential elements of murder[.]" This language is virtually identical to the language at issue in the jury instruction in Thomas. In Thomas, when instructing the jury on the offenses of aggravated murder and murder, the trial court instructed the jury to consider the lesser included offense of murder "if you find that The State has failed to prove beyond a reasonable doubt the element of prior calculation and design[.]" Thomas, supra, at 220.
The parties apparently misunderstand the reasoning of Thomas if they believe that the instruction given to Mathes' jury was improper because of its similarity to the instruction at issue in Thomas. The question before the Supreme Court of Ohio in Thomas was whether a jury should be instructed to unanimously acquit a defendant of the greater offense before deliberating on lesser included offenses. As is explained in the third paragraph of the syllabus quoted above, the Supreme Court held that the jury should not be so instructed. That question was before the Supreme Court, however, because Thomas's jury was not so instructed and this Court had reversed his conviction for that reason. The Supreme Court reversed this Court, disagreeing with the law it applied, and reinstated Thomas's conviction. The Supreme Court found that the trial court's instruction complied with the new syllabus law because it did not expressly require the jury to unanimously acquit Thomas of aggravated murder before considering the offense of murder.
Although the Thomas court noted that "a better instruction would be to incorporate the `inability to agree' language adopted by this court today[,]" it explained that "[i]n our opinion, [the] instruction has negligible coercive potential because it speaks to the jury's inability to find, whether unanimously or not, a certain element of the greater offense." Id. at 220-221. That reasoning from Thomas applies with equal force to the instruction given to Mathes' jury. Although it may not have been an ideal instruction, the trial court committed no error. The second assignment of error is overruled.
ASSIGNMENT OF ERROR III
 It was error for the trial court to admit the opinion of a police officer on the ultimate issue of fact in this case.
 Through his third assignment of error, Mathes contends that the trial court erred by allowing Ms. Myers to testify that she believed that Mathes, as opposed to Wohlford, was the one who had stabbed Stanfield. Mathes contends that this opinion testimony was inadmissible because it went to an ultimate issue to be determined by the jury. As legal authority, Mathes cites only Evid.R. 702 and Evid.R. 704, neither of which support his argument.
Evid.R. 702, which pertains to the testimony of experts, is inapplicable to this particular testimony. The testimony at issue was Myers' conclusion, as a police officer, that the police had arrested the correct suspect. During this portion of her testimony, Myers was testifying as a lay witness, not a psychological expert.
Evid.R. 704 does not support Mathes' argument, either. Evid.R. 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Mathes does not contend that the testimony at issue was not "otherwise admissible." This Court is not inclined to explore all potential avenues of inadmissibility in an attempt to make that argument for him. It is the duty of the appellant to demonstrate error through legal argument. See App.R. 16(A)(7). Because Mathes has failed to demonstrate that the trial court erred in admitting this testimony, his third assignment of error is overruled.
ASSIGNMENT OF ERROR IV
 The trial court erred in permitting the testimony of the doctor who conducted the evaluation of appellant Mathes in this case.
 Mathes originally entered a plea of not guilty by reason of insanity. Consequently, the trial court ordered that the Court Psycho-Diagnostic Clinic perform an evaluation of Mathes' mental condition. Dr. Ben-Porath performed that evaluation. Prior to trial, however, Mathes withdrew his insanity plea. Mathes contends that, because he had withdrawn his insanity plea, the trial court erred in allowing the state to question Dr. Ben-Porath about statements Mathes made to him during the mental health evaluation. Specifically, Mathes contends that the trial court violated R.C. 2945.371(J) when it allowed the state to question Dr. Ben-Porath about what Mathes had told him about his consumption of alcohol and whether he was hostile toward Stanfield on the night he died.
R.C. 2945.371(J) provides:
 No statement that a defendant makes in an evaluation * * * relating to * * * the defendant's mental condition at the time of the offense charged shall be used against the defendant on the issue of guilt in any criminal action or proceeding[.]
 This particular provision became effective on July 1, 1997. Prior to that time, a very similar provision, R.C. 2945.39(D), provided that "[n]o statement made by a defendant in an examination or hearing relating to his mental condition at the time of the commission of an offense shall be used in evidence against him on the issue of guilt in any criminal action." The Ohio Supreme Court interpreted the former R.C. 2945.39(D) in State v. Cooey (1989), 46 Ohio St.3d 20, and held:
 A defendant's statements made in the course of a court-ordered psychological examination may be used to refute his assertion of mental incapacity, but may not be used to show that he committed the acts constituting the offense.
 Id. at paragraph two of the syllabus. The Cooey court concluded that the statute distinguishes between factual evidence of guilt and issues of the defendant's psychological state; it only prohibits the introduction of defendant's statements that tend to implicate him in the crime. See id. at 32.
The 1997 amendment to the provision and its recodification at R.C.2945.371(J), left the language of the former R.C. 2945.39(D)[1]
virtually intact, but added the following language:
 [B]ut, in a criminal action or proceeding, the prosecutor or defense counsel may call as a witness any person who evaluated the defendant or prepared a report pursuant to a referral under this section. * * *
 The additional language does not detract from the Supreme Court's holding in Cooey. In fact, this language offers further support that the statute does not prohibit the introduction of statements made by the defendant during a court-ordered mental health examination other than the defendant's admissions that tend to implicate him in the crime.
The evidence at issue, defendant's statements about how much alcohol he had consumed on night of June 2 and the early morning hours of June 3, 1999, and whether he was hostile toward the victim that night, went solely to the issue of Mathes' mental state. These statements did not constitute admissions of guilt, nor did they implicate Mathes in Stanfield's killing in any way. Therefore, Mathes has failed to demonstrate that the trial court violated R.C. 2945.371(J) by allowing this testimony. Mathes' fourth assignment of error is overruled.
ASSIGNMENT OF ERROR V
 Defense counsel's repeated acts and omissions deprived appellant of effective assistance of counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 16 of the Ohio Constitution.
 Mathes contends that his trial counsel was ineffective for failing to raise timely objections to any of the errors he has assigned in his first four assignments of error. To establish a claim of ineffective assistance of counsel, Mathes must satisfy the two-pronged test set forth in Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 693:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 This Court addressed the merits of each of Mathes' first four assignments of error and found them to be without merit. Therefore, Mathes has failed to demonstrate any error by his trial counsel, much less serious errors amounting to deficient performance. Because Mathes has failed to establish even the first prong of the Strickland test, he has not demonstrated a claim of ineffective assistance of his trial counsel. The fifth assignment of error is overruled.
 III.
Mathes' assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ______________________________________ DONNA J. CARR
BATCHELDER, P.J., WHITMORE, J. CONCUR.
[1] It also combined with the former R.C. 2945.38(J), relating to the admissibility of statements made by the defendant during evaluation of his competency to stand trial.