Elbert Phillip LONG,
Petitioner-Appellant,

v.

Steven SMITH, Superintendent, Kentucky State Reformatory at Lagrange, Kentucky, Respondent-Appellee.

No. 80–3057.

United States Court of Appeals,
Sixth Circuit.

Argued June 2, 1980.

Decided Oct. 21, 1981.

As Amended Oct. 29, 1981.

Erwin W. Lewis, Asst. Public Advocate, Frankfort, Ky. (court-appointed), for petitioner-appellant.

Robert F. Stephens, Atty. Gen. of Kentucky, Nancy A. Barrickman, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before EDWARDS, Chief Judge, and WEICK and JONES, Circuit Judges.

WEICK, Circuit Judge.

Petitioner-Appellant Elbert Phillip Long (Long) has appealed to this court from an order of the District Court denying his application for a writ of habeas corpus under 28 U.S.C. § 2254.

Long had been convicted of murder and attempted rape by a jury in the Circuit Court of Davies County, Kentucky, and was sentenced to a term of life and five years imprisonment, respectively. His conviction was affirmed on direct appeal by the Supreme Court of Kentucky in an unanimous opinion written for the court by Judge Jones reported in *Long v. Commonwealth of Kentucky,* 559 S.W.2d 482 (1977). The Supreme Court held that Long had not sufficiently preserved for appellate review the trial court's alleged erroneous instructions to the jury by objecting thereto as required by Kentucky Criminal Rule 9.54(2). His subsequent motion to vacate judgment filed in the Davies Circuit Court under R.Cr. 11.42 was overruled. In that motion, he raised only the issue of ineffective assistance of counsel. Upon appeal therefrom to the Kentucky Court of Appeals, the Judgment of the Davies Circuit Court was affirmed in an unpublished opinion copied in the appendix on pages 80 *et seq.* The Supreme Court of Kentucky denied Long's motion for a discretionary review of the decision of the Kentucky Court of Appeals, App. 85.

The Supreme Court of Kentucky in the direct appeal summarized the evidence upon which the jury made its determination of guilt as follows:

On November 16, 1976, at approximately 9:40 A.M., Elbert went to the Owensboro-Daviess County Animal Shelter to "look at some dogs." Mrs. Connie White was in charge. Shortly after Elbert arrived at the shelter he led or pushed Connie at gun point into the bathroom with his left hand over her mouth and holding in his right hand a gun pointed against her ear. Elbert told Connie, "Just do as I say and everything will be alright." He then ordered Connie to take her clothes off. She took her jacket and jumpsuit off and "undid" her bra. At that point a truck arrived. Elbert ordered Connie to put her clothes on. He then went to the office and Connie followed him. The truck driver was William C. Damron, Jr., Connie's father, who was dog warden of Daviess County. Connie's demeanor and her conduct alerted Damron that something was wrong. He said to Connie, "What's the matter with you?" Subsequently, Connie took her father outside and told him of Elbert's attempted rape. Damron went to his truck and procured a .22 caliber pistol. He returned to the office. A struggle between Damron and Elbert took place in the doorway. Elbert shot Damron with a .38 caliber pistol, seized Damron's pistol and fled the scene. Shortly thereafter Damron died as a result of the gunshot wound.

Other testimony offered by the Commonwealth was that of the officers who made the investigation. Also, there was the testimony of two witnesses who had a brief glimpse of the struggle, and heard the shot. *Long v. Commonwealth of Kentucky, supra,* p. 483.

I

The principal issue raised on this appeal relates to the trial judge's alleged erroneous instructions to the jury to which no objection was made at the time they were given and the trial court was afforded no opportunity to make any changes therein or to comply with the objections now raised for the first time in the collateral attack on the conviction in this habeas proceeding.

Kentucky has a rule which deals with this procedure which provides as follows:

**Kentucky Criminal Rule 9.54(2)**

No party may assign as error the giving or failure to give an instruction unless he fairly and adequately presented his position by an offered instruction or by a motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection. App. pages 99–100

The trial court had instructed the jury on the murder charge as follows.

You will find the defendant, Elbert Phillip Long, guilty under this Instruction if you believe from the evidence beyond a reasonable doubt all of the following;
(a) That in Daviess County, Kentucky, on or about the 16th day of November, 1976, and before the finding of the Indictment herein, he killed William C. Damron by shooting him with a pistol,
(b) That in so doing he intended to cause William C. Damron's death,
(c) That when he did so he was not acting under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be; and
(d) That in so doing he was not privileged to act in self-protection.

The court gave further Instruction No. V to the jury, a copy of which is appended hereto.

Long made no objection to this instruction but instead his counsel tendered to the trial court his special instruction on self-preservation which instruction his counsel later conceded was incorrect. It would have been prejudicial error for the court to give it as was held by the Supreme Court of Kentucky.

The Supreme Court of Kentucky dealt with this issue as follows:

The court now directs its attention to Elbert's argument that the trial court erred by placing improper qualifications upon his privilege of self-protection in its instruction to the jury. The record reveals that at the conclusion of all the evidence the trial court stated, "I have the instructions about ready ... but I do want a chance to go over with the attorneys some things ...."

While court and counsel were in chambers and out of hearing of the jury Elbert's counsel stated, "I would like to tender the self-defense instruction." In response the court said, "Let the record show that no one has any objections to the instructions given except insofar as on behalf of the defendant (Elbert) as the court refuses to give the defendant's Instruction I." Elbert's tendered instruction is as follows:

"If at the time the defendant shot William C. Damron as mentioned in Instruction I he believed that William C. Damron was then and there about to use physical force upon him, he was privileged to use such physical force against William C. Damron as he believed to be necessary in order to protect himself from it.

'Physical force' means force used upon or directed toward the body of another person."

Elbert concedes that his tendered instruction was not proper in that it instructed only as to the privilege to use physical force. It appears to this court that Elbert's tendered instruction on self-protection is copied verbatim from Palmore, *Kentucky Instructions to Juries*, Sec. 10.01. That instruction deals with the use of non-deadly force. The defense of self-protection is defined in KRS 503.-050, which distinguishes deadly force and non-deadly force. Under the facts of this case, where both Elbert and Damron were armed with pistols and engaged in an apparent "shoot-out," then the self-protection instruction given by the trial court was in compliance with the definition of self-protection involving a deadly force as set out in KRS 503.050. Elbert's tendered instruction did not impose any qualification on the justification for self-protection. The instruction on self-protection given by the trial court included the qualification. Thus, Elbert received an unexpected bounty under the instructions given by the trial court.

The court further stated:

This court is of the opinion that when Elbert tendered an instruction containing no qualification on his theory of self-protection, and did nothing further to clarify his objections to the self-protection instruction offered by the trial court, his tendered instruction did not "fairly and adequately" present his position to the trial court. Because the trial court had no opportunity to rule upon the matter, there was no error.

With respect to Long's claim that his conviction for attempted rape of the victim's daughter was not established by sufficient evidence, the Supreme Court of Kentucky stated:

Elbert next argues that the prosecution failed to establish the element of specific intent to rape beyond a reasonable doubt. At the close of all the evidence Elbert failed to renew his motion for a directed verdict of acquittal. This court has recently held:

"A motion for directed verdict made at the close of the plaintiff's (here the Commonwealth's) case is not sufficient to preserve error unless renewed at the close of all the evidence, because once the defense has come forward with its proof, the propriety of a directed verdict can only be tested in terms of all the evidence.

If there has been no motion for a directed verdict at the close of all the evidence, it cannot be said that the trial judge has ever been given an opportunity to pass on the sufficiency of the evidence as it stood when finally submitted to the jury. In effect, therefore, a motion for directed verdict made only at the close of one party's evidence loses any significance, once it is denied and the other party, by producing further evidence, chooses not to stand on it". *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977).

■ In any event, this court is of the opinion that Elbert's action in forcing Connie into the bathroom at gun point, cornering her, kissing her, and ordering her to remove her clothes, would support a jury's belief beyond a reasonable doubt that he intended to rape Connie.

It is noteworthy that in his petition for a writ of habeas corpus filed in the District Court, Long did not challenge his conviction for attempted rape and thereby abandoned all claims of alleged error in respect thereto. In said petition for a writ of habeas corpus he relied solely on the alleged erroneous instructions to the jury, ineffective assistance of his counsel.

Since Long did not renew at the close of all the evidence the motion for a directed verdict of acquittal he made at the close of the government's evidence, he was not in a position to challenge the sufficiency of the evidence on any issue in the case as was correctly held by the Supreme Court of Kentucky. 559 S.W.2d 485.

Long contends that the state court erred in its instructions to the jury to which he made no objection and he claims it was plain error and deprived him of his defense of self-defense in violation of his constitutional right of due process of law. He complains of the language of Instruction No. 5, appended hereto, which states in part:

If you believe from the evidence beyond a reasonable doubt that before the defendant shot William C. Damron:

(a) He provoked Damron by attempting to rape his daughter and/or pointing a .38 caliber pistol at him;

AND

(b) That he did so with the intention of causing death or serious bodily harm to Damron;

Then he is not so privileged and not entitled to the defense set forth in this Instruction.

■ We agree that this instruction which was approved by the Supreme Court of Kentucky was not a model of clarity. There was evidence, however, which the jury believed that Long, using his pistol pointed at her head, had attempted to rape Damron's daughter, when he required her to remove her clothes in the bathroom, and the jury found him guilty of that charge.

The legality of his conviction for attempted rape is not before us for review as hereinbefore pointed out. There was also evidence that Long did point his gun at Damron, grappled with him, shot him, took Damron's gun from him and fled from the scene of the incident with both guns.

We are of the opinion that if the instruction was erroneous, it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Actually, there was substantial evidence that Elbert Long did not act in self-defense. His testimony was incredible. The Supreme Court of Kentucky in reviewing part of this testimony stated:

At the close of the Commonwealth's case, Elbert's counsel moved for a directed verdict. The trial court overruled the motion and Elbert testified in his own behalf.

As the custom is in most rape cases, the victim seduces the defendant whose intentions are always as pure as the "driven snow." Thus, it was with Elbert. He stopped by the animal shelter to look at some dogs. He testified that Connie showed him some dogs and later propositioned him in this manner: ". . . and she came back there and she had kind of a smile and she said, 'You want more than to look at dogs, don't you?' I said 'No' and I left." Elbert testified that he saw Damron get a pistol from the truck, come back to the office and threaten to kill him. Elbert testified that when Damron "cocked" his gun he shot Damron, took his gun and fled. 559 S.W.2d 483, 484.

When Long drove his car and stopped in front of the dog pound where the daughter was working, he took his gun from the car together with 19 or 20 shells, and entered the dog pound. He did not need his gun and the extra shells to look at the dogs in the dog pound. He used the gun in his attempt to rape the daughter. When the father entered the pound with his gun, he told his daughter to call the police. If the father had intended to shoot Long, he never would have asked the daughter to call the police.

Long testified on cross examination:

XQ Why do you think he told his daughter to call the police?

A I don't know.

XQ You hadn't done anything, had you?

A Maybe he seen the gun and got scared. I don't know.

XQ Maybe what?

A Maybe he seen the gun and got scared. I don't know.

XQ Seen what gun?

A The gun I had.

XQ Well, as I recall your testimony you didn't pull your gun until after he stood there at the door and threatened to kill you which was after he told his daughter to call the police?

A My jacket only went down to about my waist and if I had bent over or something my gun could have been seen.

XQ But you're not sure?

A No, sir.

While fleeing from the scene with both guns and his additional cartridges, Long reloaded his .38 caliber pistol. Ordinarily, a person who commits an act in self-defense does not flee from the law after committing his act.

District Judge James F. Gordon in reviewing the evidence in his Memorandum Opinion stated:

The review of the Transcript of the record in this case convinces us that proof of guilt of petitioner was overwhelming.

Thus, Kentucky's highest court disposed of Long's direct appeal solely on a state ground, namely, that the alleged error claimed by Long in the trial court's instructions was not subject to appellate review because Long had not made specific objections thereto so that the trial judge would have had an opportunity to rule thereon.

 In a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's

highest court on purely state law. Federalism requires that we accept the state Supreme Court's decision on state law as being correct as state courts must respect the decisions of federal courts on federal law. Furthermore, as a general rule, errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings. *Linebarger v. Oklahoma*, 404 F.2d 1092 (10th Cir. 1968), *cert. den.* 394 U.S. 938, 89 S.Ct. 1218, 22 L.Ed.2d 470 (1969). They are not constitutional errors unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law, *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

■ The decision of the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) is applicable. There was no showing by Long of "cause" and "prejudice". Guilt was shown, as found by the District Court's review of the record, by overwhelming evidence. See also, *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Fairbanks v. Cowan*, 551 F.2d 97 (6th Cir. 1977); *Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. 1978).

## II

We further agree with the District Court that the record does not support the claim of Long to ineffective assistance of counsel. *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974); *Linebarger v. Oklahoma, supra.*

The judgment of the District Court is affirmed.

## APPENDIX

### INSTRUCTION No. V

If at the time the defendant shot William C. Damron he believed William C. Damron was then and there about to use deadly physical force upon him, he was privileged to use such physical force against William C. Damron as he believed to be necessary in order to protect himself from it, but including the right to use deadly physical force in so doing only if he believed it was necessary in order to protect himself from death or serious physical injury at the hands of William C. Damron, subject to this qualification:

If you believe from the evidence beyond a reasonable doubt that before the defendant shot William C. Damron:

(a) He provoked Damron by attempting to rape his daughter and/or pointing a .38 caliber pistol at him;

AND

(b) That he did so with the intention of causing death or serious bodily harm to Damron;

Then he is not so privileged and not entitled to the defense set forth in this Instruction.

"Deadly physical force" means force which is used for the purpose of causing death or serious physical injury or which the defendant knows to create a substantial risk of causing death or serious physical injury.

"Serious physical injury" includes physical injury which creates a substantial risk of death.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge, concurring in result.

In my view the instruction in this murder trial concerning the attempted rape allegation was clear error and an abuse of federal due process rights. Nonetheless, I concur in the result reached by Judge Weick on the ground that on the factual record before us the instruction error was harmless beyond reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).