845 F.2d 325
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marvin BEACH, Petitioner-Appellant,
v.
Carl HUMPHREYS, Respondent-Appellee.
 No. 87-3769.
 United States Court of Appeals, Sixth Circuit.
 April 21, 1988.
 
 Before LIVELY and RALPH B. GUY, Jr., Circuit Judges, and AVERN COHN, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Marvin Beach was convicted of voluntary manslaughter, with a firearm specification, by an Ohio jury. He now appeals the district court's denial of his petition for a writ of habeas corpus. Because we agree with the district court's finding that each of the numerous claims made by petitioner either fails to raise an issue of constitutional magnitude or raises an issue which lacks merit, we affirm.
 
 I.
 
 2
 In January, 1984, petitioner, Marvin Beach, was indicted by the Cuyahoga County Grand Jury on one count of murder in violation of Ohio Rev.Code Ann. Sec. 2903.02, with a firearm specification pursuant to Ohio Rev.Code Ann. Sec. 2929.71. A jury found petitioner guilty of the lesser included offense of voluntary manslaughter pursuant to Ohio Rev.Code Ann. Sec. 2903.03, with a firearm specification. Thereafter, the trial court sentenced Beach to a term of five years to twenty-five years on the voluntary manslaughter conviction, to be served consecutive to a term of three years on the firearms specification conviction.
 
 
 3
 The decision of the trial court was affirmed by the Court of Appeals of Ohio, Eighth District. The facts of the case were summarized by the court of appeals as follows:
 
 
 4
 On March 12, 1984, defendant Marvin Beach killed his nephew Marvin Fuller with a single shotgun blast....
 
 
 5
 At trial, it was uncontroverted that defendant killed Fuller....
 
 
 6
 Fuller and his wife Beverly lived in Beach's house with Beach and eight other relatives.
 
 
 7
 On March 12, 1984, dissension arose when Fuller sought to move his former wife and her three children into defendant's home. When Beach objected, Fuller challenged his uncle to come outside, where Fuller brandished a baseball bat while Beach watched from a window. According to defendant, Fuller was drunk.
 
 
 8
 Fuller drove off in his truck and returned two hours later with Beverly. He pounded on the kitchen window and broke the glass. Beach, who was in the kitchen with a loaded shotgun, fired through the window, killing Fuller. Defendant testified that he smelled gasoline and feared that Fuller would throw the liquid into the house.
 
 
 9
 Although the defense attempted to demonstrate that Fuller had something in his hand when he pounded on the window, no gasoline or foreign objects were found at the scene by police.
 
 
 10
 The Supreme Court of Ohio overruled Beach's motion for leave to appeal and, sua sponte, dismissed the appeal for the failure to raise a substantial constitutional question.
 
 
 11
 On April 23, 1986, Beach filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. Sec. 2254,[1] in the United States District Court for the Northern District of Ohio, Eastern Division.[2] The district court referred the case to the magistrate for a report and recommendation pursuant to 28 U.S.C. Sec. 636(b)(1). In his report dated June 1, 1987, the magistrate recommended that Beach's petition for a writ of habeas corpus be dismissed. Petitioner filed objections and exceptions to each and every finding of the magistrate. In an order dated June 22, 1987, the district court adopted the report and recommendation of the magistrate and dismissed Beach's petition for a writ of habeas corpus. On August 20, 1987, the district court issued a certificate of probable cause, and the matter is now before this court for review.[3]
 
 II.
 
 12
 Beach grounds his petition for a writ of habeas corpus on numerous claimed violations of his rights under the Constitution.[4] We address these claims below seriatim.
 
 
 13
 A. Whether the Petitioner Was Denied His Rights of Confrontation and Cross-Examination Where the Trial Court Allegedly Would Not Permit Impeachment of a Prosecution Witness With Regard to Matters Affecting the Witness' Credibility
 
 
 14
 Petitioner contends that he was denied his rights of confrontation and cross-examination when he was not permitted to impeach a prosecution witness, Beverly Fuller, with regard to her relationship to the decedent victim. The sixth amendment to the Constitution, as applied to the states via the fourteenth amendment, confers upon a criminal defendant the right to confront the witnesses against him. See Stevens v. Bordenkircher, 746 F.2d 342 (6th Cir.1984). Included in this guarantee is the right of the defendant to test the credibility of witnesses for the prosecution through cross-examination, although the scope of cross-examination may be limited by the trial court in the exercise of its discretion. In determining whether a trial court has improperly exercised its discretion, a reviewing court must decide " 'whether the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating appraisal' of a witness' motive and bias.' " Id. at 347 (quoting United States v. Touchstone, 726 F.2d 1116, 1123 (6th Cir.1984)).
 
 
 15
 At trial, petitioner sought to establish that Fuller was biased by questioning her with regard to the details of a petition for annulment of her marriage to the victim, her husband, which she had previously filed when she and the victim lived in California.[5] Petitioner also sought to attack the credibility of Fuller by questioning her with regard to a number of letters which she had previously written to the victim.
 
 
 16
 At trial, Beverly Fuller testified on cross-examination that she was married to the decedent and that she was not, in fact, divorced from the victim in California. Fuller explained that she had indeed filed for an annulment, but had never received one. Elaborating further, she stated that she had used the annulment action to scare the victim into coming back to her, and that this tactic had been successful (App. 276). In the petition for annulment, Beverly Fuller had claimed that her marriage was voidable due to the fact that Marvin Fuller, the victim, had a prior existing marriage. Petitioner argues that the trial court improperly denied his right to cross-examine Beverly Fuller with regard to the grounds alleged in Beverly Fuller's petition for divorce because exposure of these grounds to the jury, he argued, would reveal Beverly Fuller's bias or partiality toward the victim in this matter.[6]
 
 
 17
 As the magistrate pointed out in his report and recommendation, the petitioner's claim that the victim's marriage to Beverly Fuller was a nullity, due to the victim's prior existing marriage, is no more than an allegation. (App. 176). Petitioner has offered no independent proof that the marriage is a nullity. Further, the jury was apprised through cross-examination that Beverly Fuller had indeed filed the petition seeking annulment and that she had done so with the purpose of "scaring him to come back to me, and it worked." (App. 276). On the basis of the information elicited on cross-examination with regard to Beverly Fuller's filing of the petition for annulment, we find that the district court correctly determined that the jury was sufficiently apprised to make a discriminating appraisal of the witness' motives and bias. Stevens, 746 F.2d at 347.
 
 
 18
 Petitioner also sought to cross-examine Beverly Fuller with reference to the contents of certain letters which she had allegedly written to the victim. According to the petitioner's brief, one such letter, dated July 7, 1982, stated: " 'I've accepted you at face value, even when you told me you'd killed someone ...' " and, in another letter, dated July 5, 1982, "she acknowledged all the bad things about him, but states that she can overlook the same except [sic] these and go on." According to petitioner, the trial court erred by not allowing the introduction of these letters into evidence because "[n]otwithstanding the fact that the decedent was a bad person, she always attempted to make him seem good...." Therefore, petitioner argues, introduction of this evidence would show the bias of Beverly Fuller in favor of the victim and affect her credibility.
 
 
 19
 On cross-examination, petitioner's counsel elicited testimony from Beverly Fuller that she was aware that her husband drank too much, that he sometimes became violent when he was drunk, and that his drinking problem caused difficulties between the two of them, but that she loved her husband a great deal despite his drinking problem. She testified further that the victim had hit her on a few occasions. (App. 277, 284-85 & 286).
 
 
 20
 In light of the jury's exposure to this testimony elicited from Beverly Fuller regarding her relationship to her husband and his violent propensities, we agree with the district court's conclusion that, in accordance with our discussion of Stevens above, the trial court properly exercised its discretion by excluding the letters in question and petitioner was not denied his right of confrontation.
 
 
 21
 B. Whether the Petitioner Was Denied a Fair Trial When the Prosecution Was Permitted to Impeach Its Own Witness by Inquiring into Past Inconsistent Statements
 
 
 22
 At trial, the prosecution called as a witness Becky Mae Puckett, the seventeen-year-old niece of the victim and great-niece of the petitioner. Puckett was present in the victim's home and was a witness to the shooting in question. In a written statement given to the police, Puckett had stated that just before the shooting took place, she had seen the decedent pounding on the window "with his hand." At trial, however, Puckett testified on direct examination that when she saw the decedent pounding on the window, "it looked like [there was] something in his hand." (App. 247). At this point, the prosecution sought the trial court's permission to impeach the witness with regard to the statement made on the stand by inquiring into her previous written statement given to the police. The trial court ruled that the prosecution had established the prerequisites of Ohio R.Evid. 607, and permitted the prosecution to proceed.[7]
 
 
 23
 Errors in the application of state law, particularly with regard to the admissibility of evidence, are generally not cognizable in federal habeas corpus proceedings. An exception to this general rule arises, however, where those errors result in a denial of fundamental fairness. Walker v. Engle, 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 951, cert. denied, 464 U.S. 962 (1983). While not suggesting that the trial judge erred by allowing the prosecutor to proceed under Ohio R.Evid. 607 by inquiring into Puckett's past inconsistent statement, we conclude that no denial of fundamental fairness as guaranteed under the Constitution flowed from that ruling.
 
 
 24
 Petitioner first argues that because the prosecutor met with Puckett one or two days before her testimony was taken at trial,[8] the prosecutor was required to disqualify himself because, "[o]nce counsel proceeds to question a witness with whom he has had a conversation he, in effect, becomes a witness at the trial." (Petitioner's Brief at 12). Petitioner cites three cases in support of his argument, each of which involves a situation where the attorney had been placed in the position of becoming a potential witness. See United States v. Peng, 602 F.Supp. 298, 304 (S.D.N.Y.), aff'd, 766 F.2d 82 (2d Cir.1985) (defense counsel questioned witness about a meeting between the witness, defendant, defense counsel, and a partner of defense counsel which court characterized as more than a witness interview); United States v. McKeon, 738 F.2d 26, 34 (2d Cir.1984) (court held there was no per se rule preventing use of an earlier opening statement by counsel as an admission against a criminal defendant in a subsequent trial); United States v. Cunningham, 672 F.2d 1064, 1075 (2d Cir.1982) (trial attorney was a likely witness to rebut the testimony of the government witness). None of the cases cited by petitioner involves a witness interview, and this court is aware of no authority which supports petitioner's position. We therefore find that petitioner's claim is without merit.
 
 
 25
 Petitioner then argues that the act of impeachment undertaken by the prosecutor deprived petitioner of his right to confrontation under the sixth amendment, citing Douglas v. Alabama, 380 U.S. 415 (1965), in support of his claim. Douglas, however, provides no support for petitioner's claim. In Douglas, the witness had invoked his right against self-incrimination and refused to testify at all. Therefore, the defendant in that case was entirely unable to cross-examine the witness with regard to the prior inconsistent statement introduced by the prosecution. Id. at 419-20. In the instant case, however, Puckett was available for cross-examination and she testified openly with regard to her prior statement on both direct and cross-examination (App. 247, 254 and 257). Further, as the district court pointed out, during cross-examination the petitioner obtained an explanation for the arguable inconsistency of Puckett's prior statement.[9] Under these circumstances, we are unable to find that petitioner has suffered a denial of fundamental fairness or identified a violation of his constitutional right to confrontation.
 
 
 26
 Finally, petitioner cites United States v. Hogan, 763 F.2d 697 (5th Cir.1985), as support for his position that his rights under the Constitution were violated by the prosecutor's actions. Hogan, however, deals with impeachment under the Federal Rules of Evidence, the calling of a witness which the government knows may be hostile, and the calling of that witness for the primary purpose of eliciting otherwise inadmissible impeachment testimony. Petitioner has failed to persuade us that Hogan has any bearing on the instant action.
 
 
 27
 C. Whether Petitioner Was Denied His Right of Confrontation and Cross-Examination When the Assistant Coroner Was Permitted to Testify With Regard to Her Estimation of Distances Based in Part Upon Information Gathered From Other Persons Who Did Not Testify
 
 
 28
 Petitioner contends that he was deprived of his right of confrontation and cross-examination when the trial court allowed the Cuyahoga County coroner to testify regarding her estimate of the distance between petitioner and the victim when the fatal shot was fired. The coroner's testimony in this regard was based in part upon reports from other members of the coroner's office regarding the condition of fouling and stippling on the victim's clothing. Although the witness in question had conducted the actual autopsy, she had not observed the victim's clothing. Petitioner contends that because the statement of the witness regarding the fouling and stippling on the victim's clothing was not based upon her own personal observations, the "evidence was totally improper and denied to the petitioner his right of cross-examination and confrontation." (Petitioner's Brief at 20).
 
 
 29
 In support of his position on this issue, petitioner cites Stevens v. Bordenkircher, 746 F.2d 342 (6th Cir.1984). In Stevens, the trial judge found that the proper witness to introduce the death certificate at issue in that case was the county coroner. However, the coroner had been informally released from his subpoena by the prosecutor. In the interest of expediting the trial, the trial judge admitted the death certificate into evidence over the defendant's objection that the admission of the death certificate in the coroner's absence would deny the defendant his right of cross-examination. Subsequent testimony presented at an evidentiary hearing established that the coroner had not even performed an autopsy on the victim, but had written up the death certificate based on information relayed to him by a sheriff, who in turn had received his information from an individual of questionable credibility. In remanding the case with instructions to grant the petition for a writ of habeas corpus, this court found that the death certificate in question was a "significant piece of incriminating evidence introduced at petitioner's trial," Id. at 344, and held that the petitioner's rights under the confrontation clause had been violated.
 
 
 30
 Unlike the death certificate at issue in Stevens, the reports which petitioner challenges regarding the fouling and stippling on the victim's clothing were not admitted into evidence, they were relied on only in part by the testifying assistant coroner,[10] the distance between the petitioner and the decedent was not an issue of significance in the case, other testimony was introduced at trial regarding the distance between the petitioner and the decedent (App. 272) and, based on the facts and proofs in the instant case, the reports in question did not constitute a "significant piece of incriminating evidence." Id. at 344. Therefore, we decline to find that Stevens provides any relevant support for petitioner's position, and conclude that petitioner's sixth amendment right to confrontation and cross-examination was not violated.
 
 
 31
 D. Whether the Petitioner Was Denied a Fair Trial When He Was Precluded From Communicating With His Witnesses
 
 
 32
 During the course of the trial, the court ordered the petitioner not to discuss the case with any witnesses. Many of the witnesses who testified against petitioner were relatives who had lived in his home at the time of the shooting, some of whom still lived at the petitioner's home at the time of trial. Petitioner made no objection at trial to the court's order, but now claims that the trial court deprived him of his constitutional right of access to witnesses.
 
 
 33
 Petitioner supports his claim of a violation of his rights guaranteed by the Constitution in this regard by citing United States v. Valenzuela-Bernal, 458 U.S. 858 (1982), which refers to "what might loosely be called the area of constitutionally guaranteed access to evidence." Id. at 867. However, a violation of this guarantee can only be established upon a showing that the lost evidence would have been both favorable and material to the defense. Id. at 873. Petitioner has failed to make such a showing, or even to make an allegation in that regard. Further, petitioner was not denied access to witnesses prior to trial. We therefore find this claim to lack merit.
 
 
 34
 E. Whether Petitioner Was Denied a Fair Trial When the Court Allegedly Did Not Instruct as to the Burden of Proof With Respect to Establishing of the Presence of Sudden Passion or Fit of Rage Brought on by Serious Provocation as it Pertains to the Offense of Voluntary Manslaughter
 
 
 35
 The offense of voluntary manslaughter is defined under Ohio law as follows:
 
 
 36
 No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.
 
 
 37
 Ohio Rev.Code Ann. Sec. 2903.03(A). During the course of instruction to the jury, the trial court defined the offense of voluntary manslaughter and then stated:
 
 
 38
 The defendant is under no legal obligation with respect to this mitigating factor, to prove same by a preponderance of the evidence, or by any other degree of proof.
 
 
 39
 (App. 303). Petitioner contends that due to the trial court's failure to instruct the jury that the criminal defendant has the burden of proof with regard to a showing of the presence of sudden passion or a fit of rage, he was denied his right to a fair trial under the Constitution.[11]
 
 
 40
 As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings. They are not constitutional errors unless they are so fundamentally unfair as to deprive petitioner of a fair trial and due process of law. Henderson v. Kibbe, 431 U.S. 145 (1977); Long v. Smith, 663 F.2d 18 (6th Cir.1981), cert. denied, 455 U.S. 1024 (1982). In State v. Muscatello, 57 Ohio App.2d 231, 387 N.E.2d 627 (1977), aff'd, 55 Ohio St.2d 201, 378 N.E.2d 738 (1978), the Ohio Court of Appeals analyzed the statutory offense of voluntary manslaughter and found that the emotional stress[12] factor of the offense was not an element of the offense but was a mitigating circumstance of the higher offense of murder. The court then reasoned that the law of Ohio applicable to affirmative defenses was also applicable to the mitigating factor of emotional stress and that, therefore, "with regard to voluntary manslaughter, R.C. 2903.03, the defendant in a criminal case bears only the burden of producing some evidence of emotional stress and does not have the burden of establishing such mitigating circumstances by a preponderance of the evidence or beyond a reasonable doubt." 57 Ohio App.2d at 249, 378 N.E.2d 627. With regard to the appropriate jury instruction to be delivered regarding the mitigating circumstance of emotional stress under Ohio Rev.Code Ann. Sec. 2903.03, the court held:
 
 
 41
 Once a trial court concludes that sufficient evidence of the mitigating circumstance of emotional stress has been properly presented it need only instruct the jury as to emotional stress, including an instruction that a finding by the jury that the defendant acted under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force can mitigate a purposeful killing to voluntary manslaughter.
 
 
 42
 57 Ohio App.2d at 250-51, 387 N.E.2d 627 (emphasis added). In the instant case, the trial court concluded that sufficient evidence of the existence of sudden passion or a sudden fit of rage had been presented and therefore instructed the jury regarding the presence of these emotional states. The court then instructed the jury that the presence of either of these emotional states, where brought on by serious provocation by the victim reasonably sufficient to incite petitioner into using deadly force, is a mitigating factor of purposeful killing. The instruction complied with Ohio law as set forth in Muscatello. There is no obligation under Ohio law for the court to instruct further regarding any burden of proof attendant to this issue, and the instant trial court's statement that the defendant was under no burden of proof regarding this mitigating factor was accurate. According to Muscatello, the criminal defendant bears only the burden of production of some evidence of emotional stress. A burden of production is not equivalent to a burden of proof.
 
 
 43
 Further, we find that Ohio's allocation of the burden of production to the defendant regarding the existence of sudden passion or fit of rage falls well within the holding of Patterson v. New York, 432 U.S. 197 (1977), wherein the Court upheld a fourteenth amendment challenge to a New York law requiring the defendant to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the crime of second-degree murder to one of manslaughter.
 
 
 44
 Finally, petitioner cites no harm which he has suffered as a result of this instruction, and we find none.
 
 
 45
 F. Whether Petitioner Was Denied His Constitutional Right to Due Process when the Court Allegedly Failed to Properly Define to the Jury the Defense of Habitation
 
 
 46
 Petitioner claims that because the shooting in question occurred at the petitioner's home, under Ohio law he was entitled to the following instruction:
 
 
 47
 A homeowner lawfully inside his home has the right to resist and to kill any person who commits or attempts to commit a felony against the homeowner, any of the occupants or to the property.
 
 
 48
 The trial court ruled against the inclusion of this instruction in the charge to the jury, and upon review of petitioner's appeal, the Ohio Court of Appeals stated that the proffered instruction was "clearly deficient under the Ohio law of self-defense."
 
 
 49
 Petitioner now essentially seeks to have this court rule that the trial court and Ohio Court of Appeals reached the wrong conclusion under Ohio law. Petitioner cites only Ohio cases to support his position. This question, however, is not an appropriate issue for federal review in a habeas proceeding in the absence of a showing of an error that is so fundamentally unfair as to deprive petitioner of a fair trial and due process of law. Henderson v. Kibbe, 431 U.S. 145 (1977); Long v. Smith, 663 F.2d 18 (6th Cir.1981), cert. denied, 455 U.S. 1024 (1982).
 
 
 50
 The shooting took place when petitioner was standing in his kitchen and the victim was standing immediately outside the kitchen, right after the victim had broken a window. At trial, petitioner testified and admitted to the shooting but claimed that it was done in self-defense. The trial court read to the jury a comprehensive instruction on self-defense, a portion of which reads as follows:
 
 
 51
 You are instructed that if a person assaulted is without fault and in a place where he has a right to be and he is put in reasonably apparent danger of losing his life or receiving great bodily harm, he need not retreat, but may stand his ground, repel force by force, and if in the reasonable exercise of self-defense he kills his assailant, he is justified. There is no duty to retreat where the assault is felonious and produced imminent danger of death or great bodily harm.
 
 
 52
 (App. 300) (emphasis added). In the face of this instruction, we are entirely unpersuaded that the alleged error claimed by petitioner is so fundamentally unfair that it rises to a level cognizable by a federal court engaged in habeas proceedings.
 
 
 53
 G. Whether Petitioner Was Denied His Right Against Double Jeopardy When He Was Subjected to an Additional Sentence of Three Years on a Firearm Specification
 
 
 54
 Petitioner was found guilty of voluntary manslaughter pursuant to Ohio Rev.Code Ann. Sec. 2903.03, with a firearm specification pursuant to Ohio Rev.Code Ann. Sec. 2929.71. He was sentenced to a term of five years to twenty-five years on the manslaughter charge, and to an additional three year term on the firearm specification to be served consecutive to the sentence for manslaughter. Petitioner argues that it was improper to sentence him to an additional term of imprisonment for the firearm specification and that, as a result of his sentence, he was subjected to double jeopardy or multiple punishments for the same acts.
 
 
 55
 The double jeopardy clause of the fifth amendment protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). Petitioner argues that he committed only one offense with the shotgun, to wit: voluntary manslaughter, but that two penalties have been imposed--the voluntary manslaughter penalty, plus the additional three-year firearm specification penalty of section 2929.71.
 
 
 56
 In Missouri v. Hunter, 459 U.S. 359, 368-69 (1983), the Supreme Court stated:
 
 
 57
 Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes prescribe the "same" conduct under Blockburger [v. United States, 284 U.S. 299 (1932) ], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.
 
 
 58
 An inquiry into the legislative intent behind Ohio Rev.Code Ann. Sec. 2929.71 therefore becomes appropriate.
 
 
 59
 In the context of double jeopardy challenges to section 2929.71, the Ohio courts have repeatedly held that cumulative punishments, such as the one imposed in the instant case, were intended by the Ohio legislature. See, e.g., State v. Hughley, 20 Ohio App.3d 77, 484 N.E.2d 758 (1984); State v. Loines, 20 Ohio App.3d 69, 484 N.E.2d 727 (1984); State v. Sims, 19 Ohio App.3d 87, 482 N.E.2d 1323 (1984). In light of this legislative intent, we hold that in the instant case this "court's task of statutory construction is at an end and the ... trial court ... may impose cumulative punishment under such statutes...." Hunter, 459 U.S. at 369.
 
 
 60
 Petitioner raises two additional arguments with regard to his sentence imposed on the firearm specification. First, he argues that because section 2929.71 "has no elements and only requires the presence of a firearm to warrant an additional three-year period" (Petitioner's Brief at 35), it unconstitutionally provides punishment for no additional crime. We disagree, holding that it is well within the province of the state legislature to define state crimes and punishments, and the legislature's enactment of the firearm specification in question does not violate any right of petitioner protected under the Constitution.
 
 
 61
 Secondly, petitioner argues that because he was charged in the indictment with murder and the firearm specification, and not with voluntary manslaughter, he could only be found guilty of the firearm specification if he were found guilty of murder. Petitioner cites no authority for this argument, and we are aware of none.
 
 
 62
 Under Ohio law, voluntary manslaughter is a lesser included offense of murder. Ohio Rule of Criminal Procedure 31(c) provides that under Ohio law, a criminal defendant can be found not guilty of a crime charged in the indictment, but may still be found guilty of a lesser included offense. In the instant case, the trial court's allowance of the firearm specification to be carried forward to the lesser included offense of voluntary manslaughter violates no right of the petitioner protected by the Constitution.
 
 
 63
 H. Whether Petitioner Was Denied Due Process of Law on the Basis of the Proofs Submitted Regarding the Existence of Sudden Passion or Sudden Fit of Rage Brought on by Serious Provocation by the Decedent
 
 
 64
 Petitioner argues that the evidence introduced at trial was insufficient to establish that he acted as the result of sudden passion or a sudden fit of rage, and that "[a]t most, the evidence showed that the petitioner was scared and in fear of his life." (Petitioner's Brief at 39). In Jackson v. Virginia, 443 U.S. 307, reh'g denied, 444 U.S. 890 (1979), the Supreme Court articulated the standard of review to be applied by a habeas court regarding a sufficiency of the evidence claim. In Jackson, the Court held that an applicant is entitled to habeas corpus relief if, after viewing the evidence in the light most favorable to the prosecution, no rationale trier of fact could find proof of guilt beyond a reasonable doubt. Id. at 324; accord Scott v. Perini, 662 F.2d 428, 431 (6th Cir.1981), cert. denied, 456 U.S. 909 (1982). The Jackson standard requires such a court, faced with a record which supports conflicting inferences, to presume that the trier of fact resolved any conflict in favor of the prosecution. 443 U.S. at 326. This standard also precludes a habeas court from weighing the credibility of witnesses. Walker v. Engle, 703 F.2d 959, 969 (6th Cir.), cert. denied, 464 U.S. 951, cert. denied, 464 U.S. 962 (1983).
 
 
 65
 Witness Beverly Fuller testified that the victim walked to the outside of petitioner's house and began angrily knocking on the kitchen window. The third time that the victim knocked, his fist went through the window. Petitioner was sitting inside the kitchen with a shotgun. When the window broke, petitioner jumped up with his gun, shouted obscenities at the victim, and stated in part, "I'm going to blow you away." In reaction to this, the victim put his hands up in the air. Nonetheless defendant fired the fatal shot. (App. 269-73). On the basis of this and the similar testimony of other witnesses, a rational trier of fact could find the presence of sudden passion or a sudden fit of rage brought on by the serious provocation of the victim breaking the kitchen window, and that that provocation was reasonably sufficient to incite petitioner into using deadly force and knowingly cause the victim's death. Petitioner's claim that the evidence introduced was insufficient to support his conviction is therefore denied.
 
 
 66
 I. Whether Petitioner Was Denied Due Process of Law When He Was Convicted For Acting in Self-Defense
 
 
 67
 With regard to this claim, petitioner argues as follows:
 
 
 68
 [T]he petitioner did no more than defend his home. To convict him for a perfectly lawful act which is granted to him not only by the constitution, but by natural law would be to convict him for doing that which he had a right to do. Under these circumstances it is certainly improper and a denial of due process of law to convict the petitioner under these circumstances.
 
 
 69
 Petitioner cites no authority for his claim that the Constitution grants him a right to kill while defending his home, or that his rights under the Constitution have been violated because he was convicted for such a killing. We find that the Constitution grants petitioner no such right, and conclude that this claim is therefore not cognizable by a federal court engaged in habeas proceedings.
 
 
 70
 AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 Petitioner filed this action after the district court granted his application to proceed in forma pauperis
 
 
 [2]
 Respondent, Carl Humphreys, is the superintendent of the Hocking Correctional Facility of Nelsonville, Ohio. As the superintendent of this facility, respondent has custody of petitioner
 
 
 [3]
 Petitioner has exhausted his state court remedies in accordance with 28 U.S.C. Sec. 2254(b)
 
 
 [4]
 In his report and recommendation, the magistrate stated in response to the seventh claim appearing in Beach's original petition that placing the burden of proving self-defense on a criminal defendant is not a violation of due process. The magistrate cited Martin v. Ohio, 107 S.Ct. 1098, reh'g denied, 107 S.Ct. 1913 (1987), and White v. Arn, 788 F.2d 338 (6th Cir.1986), cert. denied, 107 S.Ct. 1370 (1987), in support of his ruling. (App. 183-84). Petitioner does not take issue with this ruling on appeal. Issues which are raised in the district court, yet not raised on appeal, are considered abandoned on appeal and not reviewable. See Hershinow v. Bonmarte, 735 F.2d 264, 266 (7th Cir.1984); McGruder v. Necaise, 733 F.2d 1146, 1148 (5th Cir.1984). We note, however, that we are in agreement with the district court's assessment of the law and its effect on petitioner's claim in this regard
 With regard to the ninth claim raised in Beach's original petition, the magistrate found that this claim was premised upon and repetitious of the petitioner's fifth claim (appearing at Part E of this opinion) wherein petitioner asserts that the trial court did not assign any burden of proof with regard to the existence of sudden passion or fit of rage. In light of petitioner's deletion, on appeal, of his original ninth claim, it appears that petitioner is in agreement with the magistrate's assessment of his claim.
 Finally, we note that the tenth claim appearing in Beach's original petition has been split into two claims in his brief on appeal. These claims are found, respectively, in Parts H and I of this opinion.
 
 
 [5]
 The petition for annulment was filed in Palm Springs, California, on July 27, 1981
 
 
 [6]
 At trial, petitioner attempted to defend against the murder charge partially on the basis of self-defense. Therefore, the character of the victim was at issue
 
 
 [7]
 In concluding that the prosecution was entitled to proceed under Ohio R.Evid. 607, the trial judge determined that the prosecutor had established the requisite showing of surprise and affirmative damage with regard to the testimony of Puckett on the stand. See Ohio v. Holmes, 30 Ohio St.3d 20, 506 N.E.2d 204 (1987)
 
 
 [8]
 According to the record submitted on appeal, the prosecutor met with Puckett one or two days before the taking of her testimony and confirmed the accuracy of her statement
 
 
 [9]
 Q. [Defense attorney] Did you tell the police about seeing something in his hand?
 A. [Puckett] Yes, but they wouldn't--they told me if I wasn't for sure that I didn't see it, then they had to write a no down, because I wasn't for sure. I was just, you know, I wasn't for sure, so they didn't write it down.
 (App. 257).
 
 
 [10]
 The assistant coroner testified that during her examination she saw no evidence of the presence of either fouling or stippling on the body itself, and based her estimation of the distance between petitioner and decedent in part on that observation. (App. 224)
 
 
 [11]
 We note that the defendant not only argues for an instruction that would have misstated Ohio law but also would have placed a greater burden on him
 
 
 [12]
 The court in Muscatello analyzed a prior version of the Ohio voluntary manslaughter statute. That version stated: "No person while under the influence of extreme emotional stress brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force shall knowingly cause the death of another." Ohio Rev.Code Ann. Sec. 2903.03(A) (Anderson 1975) (repealed 1982). A 1982 amendment to this section changed the language "while under the influence of extreme emotional stress" to "while under the influence of sudden passion or in a sudden fit of rage." We find that this amendment to the statute does not in any way affect our interpretation of Muscatello or our analysis of the instant case