917 F.2d 25
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ricky RIMMER-BEY, Petitioner-Appellant,
v.
Dale FOLTZ, Respondent-Appellee.
 No. 88-1929.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1990.
 
 Before BOYCE F. MARTIN Jr., and RALPH B. GUY, Jr., Circuit Judges, and DOWD, District Judge.*
 PER CURIAM.
 
 
 1
 Ricky Rimmer-Bey, a Michigan state prisoner, appeals the district court's order dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254. We affirm.
 
 
 2
 Rimmer-Bey was convicted of first degree felony murder and of armed robbery by a Wayne Circuit Court jury on February 11, 1976. He received a mandatory term of life imprisonment for the felony murder conviction and a concurrent term of thirty to sixty years for the armed robbery conviction. The Michigan Court of Appeals affirmed Rimmer-Bey's felony murder conviction, but vacated the armed robbery conviction on June 21, 1978. The Michigan Supreme Court denied appeal on January 30, 1985.
 
 
 3
 Subsequently, Rimmer-Bey filed a petition for habeas relief in United States District Court, claiming that he was denied a fair trial and due process of law because his conviction was tainted by an erroneous evidentiary ruling and that he was denied the effective assistance of trial and appellate counsel. The district court initially granted the petition, finding that Rimmer-Bey's constitutional rights were violated by the state trial court's erroneous evidentiary ruling. Subsequently, Dale Foltz, the respondent in this case, filed a motion to alter or amend the order granting habeas relief. The district court granted the motion and vacated the prior grant of tentative habeas relief. The court held that the Michigan trial court's evidentiary ruling, although a violation of Rimmer-Bey's due process rights, was harmless beyond a reasonable doubt. As to Rimmer-Bey's ineffective assistance of counsel claim, the district court found that Rimmer-Bey had received reasonable professional assistance at both the trial level and the appellate level.
 
 
 4
 On appeal, Rimmer-Bey reasserts his claim that his conviction was tainted by the erroneous evidentiary ruling and further argues that the district court erred when it relied upon the statement of facts submitted by the Warden in reversing its order granting habeas relief. Rimmer-Bey also argues that the district court erred in concluding that the erroneous evidentiary ruling was harmless beyond a reasonable doubt.
 
 
 5
 We first address the issue of whether the district court erred when it adopted the Warden's summary of the facts in reversing its order granting habeas relief. In habeas corpus proceedings, the district court is required to either make its own findings of fact or hold an evidentiary hearing. Loveday v. Davis, 697 F.2d 135 (6th Cir.1983). The district court in this case did neither, and instead adopted the facts as offered by the Warden. This was plain error. We find, however, that there was no prejudice.
 
 
 6
 Regarding the evidentiary ruling, Rimmer-Bey claims that the trial court erroneously excluded from the jury's consideration evidence that an accomplice witness had recanted his preliminary examination testimony which implicated Rimmer-Bey. This claim focuses on the testimony of Larry Smith, who was intended to be a witness against Rimmer-Bey. Smith was an alleged accomplice who testified against Rimmer-Bey at the preliminary examination to establish probable cause in the armed robbery charges. During the time between the preliminary examination and the trial, however, Smith signed a sworn statement that recanted his preliminary examination testimony. The officer in charge of the case stated that Smith called him the next day and told him that Smith's testimony at the preliminary examination was the truth. Smith, however, denied telling this to the officer.
 
 
 7
 At trial, Smith refused to testify, invoking the fifth amendment. On that basis, the trial court held that Smith was an unavailable witness and admitted his preliminary examination testimony. The trial court, however, refused to allow the jury to hear about Smith's recantations.
 
 
 8
 Ordinarily, alleged errors of state evidentiary rules are not cognizable in habeas corpus cases. Pulley v. Harris, 465 U.S. 37, 41 (1984); Long v. Smith, 663 F.2d 18 (6th Cir.1981), cert. denied, 445 U.S. 1024 (1982). Where the erroneous application of a state law violates a petitioner's constitutional guarantees, however, a federal court will inquire into the state ruling on admissibility of evidence in a habeas review. Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974); Smith v. Sowers, 848 F.2d 735, 738-39 (6th Cir.), cert. denied, 109 S.Ct. 169 (1988).
 
 
 9
 The basic right of confrontation, including the opportunity to test credibility of witnesses through cross-examination is what a fair trial is all about. Davis v. Alaska, 415 U.S. 308, 315-16 (1974). A trial court may not deny a defendant's exploration of a witness' bias, prejudice or motive for testifying. Id. See also, Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).
 
 
 10
 We find here after a review of the record that the trial court's evidentiary ruling constituted a deprivation of Rimmer-Bey's constitutional rights. Rimmer-Bey was denied his right of confrontation, including the opportunity to evaluate Smith's credibility.
 
 
 11
 Although a constitutional error may have occurred at trial, that does not end our inquiry. Habeas will be denied if the error was harmless. Chapman v. California, 386 U.S. 18, 22 (1967). Whether an error is harmless depends upon a number of factors, including the importance of the error in the prosecution's case, the presence or absence of corroborating evidence, and the overall strength of the prosecution's case. Delaware v. Van Arsdall, 475 U.S. at 684.
 
 
 12
 The common law felony murder doctrine was abolished by the Michigan Supreme Court in 1980 in People v. Aaron, 409 Mich. 672 (1980), but it was intact at the time of Rimmer-Bey's trial. To sustain a conviction under the felony murder doctrine, it was not necessary to prove that Rimmer-Bey fired the fatal shot at Kratz. Rather, the prosecution only needed to prove that Rimmer-Bey was a participant in the robbery and that the murder occurred during the commission of the felony.
 
 
 13
 The evidence at trial revealed that on August 7, 1975, Rimmer-Bey went to Delta Motor Sales, located at Van Dyke Avenue in Detroit, with the intention of robbing the business. Rimmer-Bey was accompanied by several accomplices; namely, Larry Smith, Gregory Smith (Frog), Darrell McDonel, Kenneth Crawford (Paul Bunyan), and Timothy Jordan (Blunt). Jordan was tried and convicted in a joint trial with the petitioner. Testimony revealed that the gang spread out upon arriving at the used car lot, and that Rimmer-Bey and Jordan entered the office. Joseph Kratz, the owner of the used car lot, ran out of the office, and Rimmer-Bey and Jordan followed on his heels, firing gunshots. Kratz staggered out onto Van Dyke Avenue, and Rimmer-Bey followed closely. According to witnesses, Kratz fell in the road, and Rimmer-Bey reached into Kratz's pocket and removed what appeared to be some papers. One witness, Harry Wilkie, Sr., got out of his car to help the victim, but Rimmer-Bey threatened him with a gun. Rimmer-Bey then ran away. Kratz died of a gunshot wound to the chest.
 
 
 14
 Larry Smith's testimony from the preliminary examination is consistent with the version of events narrated above. In particular, Smith testified that he heard gunshots and saw Kratz run out of the office, followed by Rimmer-Bey and Jordan. Both Rimmer-Bey and Jordan followed Kratz to Van Dyke, firing shots in his direction. Smith testified that Jordan stopped at the curb, but that Rimmer-Bey followed Kratz into the street. Kratz fell, Rimmer-Bey bent over him, and then turned around and ran. Although Smith's testimony is the most damning evidence that Rimmer-Bey actually pulled the trigger, it is merely cumulative when the inquiry is viewed in terms of whether he participated in the robbery. Other witnesses link Rimmer-Bey to the robbery.
 
 
 15
 One of the most significant prosecution witnesses was Wilkie, who witnessed Rimmer-Bey chase Kratz into the street. Although Wilkie's identification of Rimmer-Bey at a line-up was too equivocal to form the basis upon which the police could arrest Rimmer-Bey, his testimony at trial was probative.
 
 
 16
 In addition, the testimony of McDonel was sufficient to place Rimmer-Bey at the robbery. He testified that he, Rimmer-Bey, and the other accomplices went to Delta Motor Sales with the intention of robbing it. During the course of the robbery, McDonel heard gunshots and saw Kratz run off the lot onto Van Dyke. He heard more gunshots, and he saw the petitioner walking across Van Dyke. He also heard Larry Smith ask the petitioner if he got the money. McDonel was impeached with a prior inconsistent statement in which he stated that he had seen the petitioner fire three shots at the victim and chase him into the street. He further testified that, after the shooting, Smith asked again if anyone got the money. The voice of the person who responded in the affirmative sounded to McDonel like that of Rimmer-Bey. He also saw Rimmer-Bey drop two ten-dollar bills while he was walking. Upon cross-examination, McDonel denied that he was testifying so that he would not be implicated. He did indicate that he waited from August until October to come forward to the police because of his belief that Rimmer-Bey had some role in Gregory Smith's death, but this response was stricken at the request of defense counsel.
 
 
 17
 McDonel's testimony was certainly sufficient, standing alone, to provide the basis for a finding that the petitioner was a participant in the robbery. In addition, his testimony, combined with that of Wilkie, indicates that the petitioner was the man who followed Kratz into the street, firing shots. Their combined testimony also supports the conclusion that Rimmer-Bey removed money from Kratz's pocket.
 
 
 18
 Because the prosecution only needed to prove that Rimmer-Bey was a participant in the robbery, we conclude that there is sufficient other evidence of Rimmer-Bey's guilt such that the Michigan trial court's evidentiary ruling was harmless error.
 
 
 19
 The judgment denying habeas corpus is affirmed.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation