JULIA SMITH GIBBONS, Circuit Judge.
I agree with the majority’s resolution of the issues discussed in Parts II.A and B of the majority opinion. And while I agree with the majority that Maurice Mackey’s attorney was deficient when he failed to request a limiting instruction with respect to Stephanie Whitmore’s testimony about Mackey’s prior bad acts, failed to object to prejudicial testimony about Mackey’s gun ownership, and failed to object to statements about Mackey’s post-arrest silence, I do not believe that Mackey was prejudiced by the cumulative effect of his attorney’s errors. I therefore dissent.
To succeed on an ineffective assistance of counsel claim, a defendant must show that his counsel’s performance was deficient and that it prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A counsel’s performance was deficient if it was objectively unreasonable under the circumstances. Id. at 688, 104 S.Ct. 2052. It was prejudicial if “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. For the purpose of ineffective assistance claims, “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. In order to grant a habeas petition, the state court’s application of Strickland must be objectively unreasonable or contrary to clearly established Supreme Court law. See 28 U.S.C. § 2254(d).
*371 The majority concludes that the state court’s decision was contrary to clearly established Supreme Court law because the state court did not consider the prejudicial impact of counsel’s errors as a group but rather evaluated prejudice with respect to each of the errors alone. Strickland’s exact language requires the defendant to show that, “but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 466 U.S. at 694, 104 S.Ct. 2052 (emphasis added). While Strickland does speak in terms of the prejudicial impact of the “errors,” it does not explicitly state that the prejudice analysis should be conducted in light of the errors considered as a group. Because AEDPA requires that Supreme Court law be “clearly established,” it is not entirely obvious that the state court acted in an objectively unreasonable way by not deducing from Strickland the purported requirement that an attorney’s errors should be combined to consider whether a defendant was prejudiced.
I also do not believe that Mackey has established that “there is a reasonable probability that ... the result of the proceeding would have been different” absent his attorney’s mistakes. Id. While there was not an overwhelming amount of evidence available in this case, there was enough evidence presented that was unaffected by counsel’s errors for the jury to properly evaluate Mackey’s self-defense claim. For example, several people testified as to the events that occurred that night outside of the Office Lounge. Mackey testified at trial that the victim Smith pulled his gun first. Whitmore, Mackey’s girlfriend, testified that she saw the victim Smith pull a gun and point it at her stomach. She also testified that she could not see Mackey at this time, but heard him fire two shots. Evidence was also presented that Smith died clutching his gun in his hand. Finally, as noted in the Ohio appellate court opinion, both Smith and Wright were shot by Mackey. The bullet hit Wright as he was running away from the scene and trying to reenter the Office Lounge; the jury could have found this fact inconsistent with Mackey’s claim that he was defending himself against Smith.
In addition, Mackey’s behavior after the shooting was inconsistent with his theory of self-defense. Mackey and his girlfriend fled the scene and drove home. When the police arrived at the home in the early morning hours after the shooting, neither answered the door. They did not surrender to the police until several hours after they knew that the police were looking for them. With these undisputed facts before it, the jury could have discounted Mackey’s claim of self-defense claim as incompatible with his actions after the shooting. See Long v. Smith, 663 F.2d 18, 22 (6th Cir. 1981) (“Ordinarily, a person who commits an act in self-defense does not flee from the law after committing his act.”); State v. Taylor, 78 Ohio St.3d 15, 676 N.E.2d 82, 94 (1997) (quoting State v. Eaton, 19 Ohio St.2d 145, 249 N.E.2d 897, 898 (1969)) (“Flight from justice ... may be indicative of a consciousness of guilt.”).
Mackey’s flight from the police also allowed the prosecution the opportunity to permissibly refer to his post-shooting, prearrest silence. See Jenkins v. Anderson, 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (“We hold that impeachment by use of prearrest silence does not violate the Fourteenth Amendment.”); see also State v. Sabbah, 13 Ohio App.3d 124, 468 N.E.2d 718, 719 (1982) (“[WJhere there has been a substantial period of pre-arrest silence, then impeachment by reference to such silence is permissible....”). While the prosecution’s comments about Mackey’s failure to tell the police after his arrest that he acted in self-defense were likely improper under Doyle v. Ohio, 426 *372 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the prosecution’s references to his pre-arrest silence were proper and allowed the jury to consider his self-defense claim in the context of his failure to talk to the police right after the incident at the Office Lounge.
In my view, there was enough evidence before the jury that was not tainted by counsel’s errors for the jury to decide that Mackey did not act in self-defense and was guilty of murder and attempted murder. While Strickland counsels that “a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support,” 466 U.S. at 696, 104 S.Ct. 2052, this was not such a weakly supported case such that there is a reasonable probability that counsel’s errors tipped the balance between a guilty and a not guilty verdict. Rather, the evidence that Mackey shot two people, shot Wright as he was turning to run back into the Office Lounge, fled the scene, and refused to talk to the police after they arrived at his home strongly suggests that his self-defense claim was not credible.
Given this evidence, I do not believe that Mackey has established that “there is a reasonable probability that ... the result of the proceeding would have been different” absent his attorney’s mistakes. Id. at 694, 104 S.Ct. 2052. For this reason, I would affirm the district court’s decision denying Mackey’s petition for a writ of habeas corpus.