Cornell **RHODES,** Petitioner–Appellant,

v.

Anthony J. **BRIGANO,** Respondent–Appellee.

No. 95–3615.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1996.

Decided Aug. 1, 1996.

Hal Roger Arenstein (argued and briefed), Cincinnati, OH, for Petitioner–Appellant.

Charles L. Wille (briefed), Stuart W. Harris, Asst. U.S. Atty., Office of the Atty. Gen. of Ohio (argued), Columbus, OH, for Respondent–Appellant.

Before: KEITH, MARTIN, and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Cornell Rhodes appeals the district court's denial of his petition for writ of habeas corpus brought under 28 U.S.C. § 2254. In denying Rhodes' petition, the district court held that the jury instructions given at his trial for murder did not unconstitutionally shift the burden of proof to Rhodes on the issue of whether the killing was the product of sudden passion or a sudden fit of rage. For the reasons set forth below, we AFFIRM.

On February 8, 1990, a jury found Rhodes guilty of murder under Ohio Rev. Code § 2903.02(A). The next day, Rhodes was sentenced to fifteen years to life in prison. Rhodes appealed his conviction, alleging that the trial court's jury instructions, which placed upon Rhodes the burden of showing by a preponderance of the evidence the mitigating circumstances of a sudden passion or fit of rage under Ohio Rev. Code § 2903.03(A), violated his right to due process under the Fourteenth Amendment. The state intermediate appellate court reversed Rhodes' conviction, holding that the trial court erred in instructing the jury that Rhodes had the burden of establishing that he killed in a sudden fit of passion or a sudden fit of rage. The state appealed the intermediate court's ruling, and the Ohio Supreme Court, in a 4–3 decision, reversed. *State v. Rhodes,* 63 Ohio St.3d 613, 590 N.E.2d 261, 265 (1992). Interpreting state statutory law, the court first held that a defendant on trial for murder bears the burden of establishing by a preponderance of the evidence that he was "under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation...." *Id.* 590 N.E.2d at 263 (quoting Ohio's voluntary manslaughter statute codified at Ohio Rev. Code § 2903.03(A)). Reasoning that "voluntary manslaughter [is] a single offense that, under certain circumstances, permits a defendant to mitigate a charge of murder to manslaughter," the court concluded that voluntary manslaughter is an inferior degree of murder. *Id.*

The court then turned to the specific issue raised by the state's appeal, namely whether the trial court properly instructed the jury by placing upon the defendant the burden of establishing by a preponderance of the evidence that he acted under sudden passion or a sudden fit of rage in defense to the murder charge. *Id.* 590 N.E.2d at 264. The court relied upon its previous opinion in *State v. Muscatello,* 55 Ohio St.2d 201, 378 N.E.2d 738 (1978), which interpreted an earlier version of Ohio's manslaughter statute. In *Muscatello,* the state supreme court held that "the 'mitigating circumstance' of 'extreme emotional stress' was not an element of the crime of voluntary manslaughter." *Id.* 378 N.E.2d at 739–40. Reviewing the *Muscatello* decision in *Rhodes,* the state supreme court explained:

> *Muscatello* is instructive for what it does not say as it is for what it does. Although

some would suggest that *Muscatello* stands for the proposition that the mitigating circumstance "extreme emotional stress" is not an element of an affirmative defense, and thus its equivalent under the current statute, "sudden passion or sudden fit of rage," also does not need to be proven as an element of an affirmative defense, we find no such language in the court's opinion. Indeed, an examination of the court of appeals' decision affirmed in *Muscatello* substantially contradicts that suggestion: "Emotional stress as a mitigating circumstance is similar to an affirmative defense since it operates as a defense to the higher offenses of aggravated murder and murder. As such, the law in Ohio applicable to affirmative defenses is also clearly applicable to the mitigating factor of emotional stress." [*State v. Muscatello,* 57 Ohio App.2d 231, 387 N.E.2d 627, 640 (1977)]. Clearly, the court of appeals directly, and this court by implication, in the respective *Muscatello* opinions, viewed the law relating to affirmative defenses as applicable to the mitigation of a charge of murder to voluntary manslaughter, and, for that reason, both courts chose not to place the burden of persuasion upon the defendant who sets forth a mitigating circumstance.

*Rhodes,* 590 N.E.2d at 264–65. Relying on this understanding of *Muscatello,* the court stated that "[w]e see no reason to alter the course set forth in *Muscatello,* and we thus continue to view the law regarding affirmative defenses to be applicable to the proof of mitigation to reduce a charge of murder to manslaughter." *Id.* 590 N.E.2d at 265. Accordingly, because Ohio's statutory scheme placed upon the defendant the burden of persuasion by a preponderance of the evidence (rather than the lesser burden of production contained in Ohio's earlier affirmative defense statutory scheme), the court held that the jury instructions placing the burden on Rhodes to establish "sudden passion or sudden fit of rage" were proper under Ohio law. *Id.* Finally, the court addressed whether shifting the burden to the defendant on this issue violated Rhodes' constitutional due process rights under *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), and concluded that it did not.

Rhodes then filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Ohio. The petition was referred to a magistrate judge, who issued a report on November 8, 1994, recommending that Rhodes' petition be denied. On May 19, 1995, the district court issued an order adopting the magistrate's recommendation. Accordingly, the district court denied Rhodes' petition on the reasons set forth in the magistrate's report. The district court also granted a certificate of probable cause to appeal, and Rhodes timely filed an appeal to this Court.

At issue before this Court is whether, as interpreted by the Ohio Supreme Court, Ohio's murder and voluntary manslaughter statutes and the jury instructions given here violated Rhodes' due process rights by unconstitutionally shifting the burden of proof to him on an element of the crime of murder. The jury instructions given by the trial court follow:

The defendant is charged with murder. Before you can find the defendant guilty of murder, you must find that the state has proved beyond a reasonable doubt that the defendant ... purposely caused the death of Annette Akins.

. . . .

A person acts purposely when it is his specific intention to cause a certain result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct. Since you cannot look into the mind of another, you must determine purpose from all the facts and circumstances in evidence.

. . . .

As you consider murder, you may also consider the lesser included offense of voluntary manslaughter. Voluntary manslaughter is knowingly causing the death of another, while the defendant is under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occa-

sioned by the victim that is reasonably sufficient to incite the defendant into using deadly force.

Before you can find the defendant guilty of voluntary manslaughter, you must find that the state has proved beyond a reasonable doubt that ... the defendant knowingly caused the death of Annette Akins. A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. Since you cannot look into the mind of another, you must determine knowledge from all the facts and circumstances in evidence. Being under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force[,] is a mitigating circumstance, which reduces what would otherwise be murder to voluntary manslaughter. The defendant has the burden of proving by a preponderance of the evidence that he acted while under the influence of sudden passion or a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force.

. . . .

If you find that the state proved beyond a reasonable doubt that the defendant purposely caused the death of Annette Akins, and you find the defendant failed to prove by a preponderance of the evidence that he acted while he was under the influence of sudden passion or in a sudden fit of rage, ... then you must find the defendant guilty of murder.

If you find that the state proved beyond a reasonable doubt that the defendant purposely caused the death of Annette Akins, but you also find that the defendant proved by a preponderance [sic] that he acted

while under the influence of sudden passion or a sudden fit of rage, ... then you must find the defendant guilty of voluntary manslaughter.

. . . .

Such passion is a mitigating circumstance, the existence of which reduces murder to voluntary manslaughter. It is not, however, an element of the offense of voluntary manslaughter. If the defendant fails to establish such passion by a preponderance, the state must still prove to you beyond a reasonable doubt all of the elements of an offense before you can find the defendant guilty of that offense.

The Ohio murder statute under which Rhodes was charged states that "[n]o person shall purposely cause the death of another." Ohio Rev. Code § 2903.02(A). "Purpose," the requisite mental state for murder is defined: "A person acts purposely when it is his specific intention to cause a certain result...." Ohio Rev. Code § 2901.22(A). The voluntary manslaughter statute states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." Ohio Rev. Code § 2903.03. By statute, a person acts knowingly if he or she is aware that his or her conduct will "probably cause a certain result or will probably be of a certain nature." Ohio Rev. Code § 2901.22(B).[1]

In determining whether a state's statutory scheme and the jury instructions given under that scheme unconstitutionally shift the burden of proof to the defendant, this Court is bound by the state court's interpretation of its criminal laws, except in extreme situations where the state court's interpretation is an "obvious subterfuge to evade consideration of a federal issue." *Mullaney v. Wilbur*, 421 U.S. 684, 690–91, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (citations and quotation omitted); *Wood v. R.C. Marshall*, 790 F.2d

---

1. The Ohio murder and voluntary manslaughter statutes recently have been amended to the unlawful termination of another's pregnancy. However, these amendments are not germane to the issue presented here.

548, 549 (6th Cir.1986), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 889, 93 L.Ed.2d 842 (1987). No indication of such "subterfuge" exists here. Therefore, we accept the Ohio supreme court's interpretation of § 2903.03 as a mitigating circumstance in the nature of an affirmative defense. *See Rhodes,* 590 N.E.2d at 265. The question we must resolve, then, is whether this interpretation of Ohio's murder and voluntary manslaughter statutes, as applied through the trial court's jury instructions, violated Rhodes' due process rights by unconstitutionally shifting the burden of proof to him on an element of the offense of murder. To answer this question, we briefly examine controlling precedent before turning to the case at bar.

■ It is beyond dispute that due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). As a concomitant principle, states ordinarily may not shift the burden to the defendant to negate an element of a crime. *Patterson v. New York,* 432 U.S. at 206–07, 97 S.Ct. at 2324–26. However, due process is not violated simply because proof of an affirmative defense, on which the defendant bears the burden of proof, may tend to negate an element of the crime charged. *Martin v. Ohio,* 480 U.S. 228, 234, 107 S.Ct. 1098, 1102, 94 L.Ed.2d 267 (1987).

In *Patterson,* the Supreme Court rejected a due process challenge to a New York statute that placed upon a defendant charged with second degree murder the burden of proving by a preponderance of the evidence the affirmative defense of "extreme emotional disturbance," 432 U.S. at 205, 97 S.Ct. at 2324, in order to reduce the crime to manslaughter. The Court began by analyzing the elements of second-degree murder set forth in the statute, noting that the state's criminal code defined the offense as "causing the death of another person with the intent to do so." *Id.* Thus, "intent" to cause the death of another, and actually causing that death, were the two elements of the crime as defined by the statute. *Id.* at 197, 97 S.Ct. at 2320. After parsing these elements of the

crime from the New York statute, the Court explained:

> The death, the intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of murder. No further facts are either presumed or inferred in order to constitute the crime. The statute does provide an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation which, if proved by a preponderance of the evidence, would reduce the crime to manslaughter, an offense defined in a separate section of the statute. It is plain enough that if the intentional killing is shown, the State intends to deal with the defendant as a murderer unless he demonstrates the mitigating circumstances.

*Id.* at 205–06, 97 S.Ct. at 2324–25. Accordingly, the Court held that the statute did not relieve the state of its burden to prove beyond a reasonable doubt each element of the crime. Finally, concluding that this statutory scheme did not violate the defendant's due process rights, the Court noted that the affirmative defense "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder." *Id.* at 206, 97 S.Ct. at 2325.

■ In *Martin v. Ohio,* the Supreme Court confronted a similar due process claim with respect to Ohio's aggravated murder statute and the affirmative defense of self-defense. The statute defined aggravated murder as "purposely, and with prior calculation and design, caus[ing] the death of another." Ohio Rev. Code § 2903.01. In light of the comment in *Patterson* that New York's statutory scheme did not require the defendant to negate any elements of the crime, the petitioner in *Martin* claimed that, because the affirmative defense of self-defense tended to negate the *mens rea* elements of aggravated murder under the Ohio statutory scheme, shifting the burden of proof to the defendant on this issue violated due process. However, the Court rejected this claim, *Martin,* 480 U.S. at 234, 107 S.Ct. at 1102, stating:

> We are thus not moved by assertions that the elements of aggravated murder and

self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former. It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but Ohio does not shift to the defendant the burden of disproving any element of the state's case. When the prosecution has made out a prima facie case and survives a motion to acquit, the jury may nevertheless not convict if the evidence offered by the defendant raises any reasonable doubt about the existence of any fact necessary for the finding of guilt.

*Id. Martin* teaches that, so long as the state is required to prove each element of a crime beyond a reasonable doubt, requiring the defendant to shoulder the burden of proving certain defenses does not inevitably violate due process, even if proof of an affirmative defense may tend to negate an element of the crime.

In *Wood v. Marshall,* this Court addressed the contention that "placing the burden of proof of irresistible impulse on [the defendant] violated his due process rights, because one acting under an irresistible impulse necessarily acts without the required *mens rea.*" 790 F.2d at 549 (italics added). The defendant Wood was convicted of aggravated murder and aggravated robbery, each crime of which, under Ohio law, contained a "purposeful" *mens rea. Id.* Dismissing the claim that one acting under an "irresistible impulse" cannot act "purposely," *id.,* we stated that:

> [W]e reject Wood's contention that proof of the insanity defense negates either the voluntariness or the mens rea element of the crimes with which he was charged. If the defense does not bear upon an element of the crime, placing the burden of proof of the defense on the defendant does not violate his due process rights under *In Re Winship, Mullaney,* or *Patterson.*

*Id.* at 550. In addition, for determining whether the state has unconstitutionally shifted the burden of proof to the defendant, we explained that, "[i]f an affirmative defense bears a necessary relationship to an element of the charged offense, the burden of proof of that defense may not be placed on the defendant." *Id.* (citing *Patterson,* 432 U.S. at 206–07, 97 S.Ct. at 2324–26).

We turn now to examine Rhodes' arguments. Rhodes first takes issue with the Ohio Supreme Court's conclusion that, under governing Ohio law, "the law regarding affirmative defenses [is] applicable to the proof of mitigation [by establishing the influence of sudden passion or a sudden fit of rage] to reduce a charge of murder to manslaughter." *Rhodes,* 590 N.E.2d at 265. Rhodes' claim is an objection to the Ohio Supreme Court's interpretation of Ohio state law. As we explained above, we are bound by the state court's interpretation of its own criminal laws, unless the interpretation is "an obvious subterfuge to evade consideration of a federal issue." *Mullaney,* 421 U.S. at 691 n. 11, 95 S.Ct. at 1886 n. 11. As we also explained, we do not believe such subterfuge exists here. Nonetheless, we will consider Rhodes' argument, if only to explain why it must fail.

Rhodes argues that, under Ohio law, an affirmative defense is a "confession and avoidance," *State v. Curry,* 45 Ohio St.3d 109, 543 N.E.2d 1228, 1230 (1989), in which the defendant admits to the elements of the crime and yet seeks to avoid guilt by proving another set of facts that absolve the accused from guilt. *See Walden v. State,* 47 Ohio St.3d 47, 547 N.E.2d 962, 965 (1989); *State v. Poole,* 33 Ohio St.2d 18, 294 N.E.2d 888, 889 (1973); *White v. Arn,* 788 F.2d 338, 344–45 (6th Cir.1986), *cert. denied,* 480 U.S. 917, 107 S.Ct. 1370, 94 L.Ed.2d 686 (1987). He then argues that a claim by a defendant that he or she acted under the influence of "sudden passion or in a sudden fit of rage" does not involve an admission to the elements of murder. Specifically, under Rhodes' theory, a defendant does not admit to "purposely" causing the death of another. According to Rhodes, this characterization of the "mitigating circumstance" of sudden passion as a claim in the nature of an affirmative defense "ignores" the Constitution.

Rhodes is correct that, in many cases, a defendant asserting an affirmative defense in essence "admits" the elements of the crime and thereafter seeks to prove an additional set of facts which absolves guilt. He is also correct that many courts have articulated the theory of affirmative defenses as defenses in which the accused admits to the elements of the crime and seeks to avoid guilt through proof of other relevant facts. *E.g., White,* 788 F.2d at 344–45. Nonetheless, the characterization of affirmative defenses as theories of "confession and avoidance" is not constitutionally driven, and the constitutional principle to be derived from the cases discussed above does not require the state to carry the burden of proof on every issue unless it involves a defense that proceeds from a "confession and avoidance" theory. Rather, statutorily designated "affirmative" defenses, on which the defendant bears the burden of proof, may be defenses that also raise a reasonable doubt about the prosecution's case. One need look no further than *Martin v. Ohio* to find support for this proposition. In *Martin,* the Court readily acknowledged that the "affirmative" defense of self-defense may tend to negate the aggravated murder elements of "purpose" and "prior calculation and design." 480 U.S. at 234, 107 S.Ct. at 1102. The Court made no mention of the possibility that this fact gave rise to constitutional concerns. Simply put, the constitutional mandate is that the state may not shift the burden of proof to the defendant if "an affirmative defense bears a necessary relationship to an element of the charged offense." *Wood,* 790 F.2d at 549. Accordingly, the fact that the Ohio Supreme Court has chosen to characterize the "mitigating" circumstance of sudden passion or sudden fit of rage as something akin to an affirmative defense is constitutionally irrelevant. The constitutional inquiry, rather, is whether sudden passion or sudden fit of rage bears a necessary relationship to an element of the offense of murder such that shifting the burden to the defendant on the issue negates an element of the crime.

We suppose it possible that Rhodes is claiming instead that the state court ignored its own precedent and Ohio statutory law in order to "evade consideration of a federal issue," *Mullaney,* 421 U.S. at 691 n. 11, 95 S.Ct. at 1886 n. 11, although the argument is not clearly articulated in his brief to this Court. Nonetheless, the state court *did* consider Rhodes' constitutional claim, and iterated its belief that Ohio's murder and voluntary manslaughter scheme, as interpreted by the state court, harbored no constitutional infirmity. Accordingly, we refuse to second guess the Ohio Supreme Court's interpretation of its own criminal law on the ground that the court has attempted to skirt constitutional mandates.[2]

---

2. We agree with the dissent in the state supreme court that Ohio's voluntary manslaughter statute is "poorly drafted and creates confusion." *Rhodes,* 590 N.E.2d at 271. As set forth above, the statute states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." Ohio Rev. Code § 2903.03(A). The plain language of the statute indicates that it applies only to those "knowingly" caused deaths that are committed while the defendant is under the influence of sudden passion or in a sudden fit of rage. In other words, if an individual knowingly causes another person's death, but is *not* under the influence of sudden passion or in a sudden fit of rage, it appears that the statute, by its own terms, is inapplicable to the crime. However, the construction placed upon the statute by the Ohio Supreme Court is that sudden passion or "in a sudden fit of rage" is not an element of voluntary manslaughter. *State v. Muscatello,* 55 Ohio St.2d 201, 378 N.E.2d 738, 738 (1978). This construction is completely understandable (because the state obviously wishes to prohibit all knowingly caused deaths), but runs counter to the express language of the statute. That the statute breeds confusion is evident from the majority opinion of the Ohio Supreme Court in this case, in which the court stated that "[u]nder the statute, the jury must find a defendant guilty of voluntary manslaughter rather than murder if the prosecution has proven, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant has established by a preponderance of the evidence the existence of one or both of the mitigating circumstances." *Id.* 590 N.E.2d at 263. This statement is surely incorrect. If the prosecution proves beyond a reasonable doubt *only* that the defendant knowingly caused the death of another, then the defendant cannot be convicted of murder (which requires a "purposeful" mens rea), regardless whether the defendant has established a mitigating circumstance, or even whether the defendant has introduced any evidence at all. In addition, if the defendant

Rhodes next argues that proof of sudden passion or a sudden fit of rage necessarily negates the "purposeful" *mens rea* element of murder. The elements of murder on which the prosecution bears the burden of proof beyond a reasonable doubt are that the defendant (1) purposely (2) caused the death of another. *See White*, 788 F.2d at 344. The three-member dissenting opinion in the Ohio Supreme Court agreed with Rhodes' claim that sudden passion or sudden fit of rage necessarily negates the purposeful *mens rea* of murder under the Ohio statutory scheme. Were we writing on a clean slate on this issue, we might agree that one who acts under the influence of sudden passion or in a sudden fit of rage does not act "purposely." As a matter of common sense, acting under the influence of sudden passion or in a sudden fit of rage implies a loss of control over one's conduct. At the very least, the existence of sudden passion or a sudden fit of rage undermines the possibility, in many cases, that one acted "purposely," with a specific intent to cause a certain result. Evidence of sudden passion certainly is relevant to determining whether the defendant acted with the required *mens rea*, and in the case of a murder charge, may raise a reasonable doubt as to whether the defendant acted "purposely."

▌ Nonetheless, we are not confronting this issue for the first time. In *Martin v. Ohio*, the Supreme Court ruled that one who acts in self-defense may commit murder "purposely," and with "prior calculation and design." 480 U.S. at 234, 107 S.Ct. at 1102. In *Wood v. Marshall*, this Court held that one acting out of "irresistible impulse" insanity may yet act "purposely." 790 F.2d at 549. In each of these cases, the Supreme Court and this Court respectively rejected the claim that the affirmative defense necessarily negated an element of the crime. These cases control our decision here. If an individual who acts in self-defense may act

with "purpose" and with "prior calculation and design," *Martin*, 480 U.S. at 234, 107 S.Ct. at 1102, and one who acts out of an "irresistible impulse" may act with "purpose," *Wood*, 790 F.2d at 549, then one acting under the influence of sudden passion or in a sudden fit of rage surely must be able to form the requisite "purposeful" *mens rea*. We find no principled distinction between these types of affirmative defenses, as they relate to the defendant's *mens rea* during the commission of the crime. Each may raise a reasonable doubt as to whether the defendant acted with the requisite *mens rea*, but not "necessarily" so. *Id.* Constrained as we are by these decisions, we do not believe the statutory scheme at issue here runs afoul of the Due Process Clause.

In light of the previous discussion, our consideration of the jury instructions given in this case need detain us only momentarily. The bulk of the trial court's instructions are set forth above. We note that the court explained to the jury that, in order to convict Rhodes of murder, the state must prove beyond a reasonable doubt that Rhodes purposely caused the death of the victim no less than three times. Specifically, the court instructed the jury that, "[i]f you find that the state proved beyond a reasonable doubt that the defendant purposely caused the death of Annette Akins, but you also find that the defendant proved by a preponderance [sic] that he acted while under the influence of sudden passion or in a sudden fit of rage . . . then you must find the defendant guilty of voluntary manslaughter." Viewing these jury instructions as a whole in the context of the crime charged, *Id.* at 550, and in light of our conclusion that shifting the burden to Rhodes to establish the existence of sudden passion or sudden rage is constitutionally permissible, we believe the instructions pass constitutional muster. The instructions clearly conveyed the state's burden to prove

establishes the existence of one of the mitigating circumstances by a preponderance of the evidence, the prosecution's proof beyond a reasonable doubt of the elements of murder is irrelevant; the defendant can be convicted only of voluntary manslaughter, and *that* only upon proof beyond a reasonable doubt that the defendant knowingly caused the death of another. Of

course, this last statement is not obvious from the language of the murder and voluntary manslaughter statutes, but rather arises from the longstanding view of Ohio courts that sudden passion or a sudden fit of rage reduces what would otherwise be murder to voluntary manslaughter. *See, e.g., State v. Tyler*, 50 Ohio St.3d 24, 553 N.E.2d 576, 592 (1990).

beyond a reasonable doubt the elements of murder, and did not imply that the burden was somehow reduced unless Rhodes proved by a preponderance of the evidence the mitigating circumstances at issue. The court sufficiently instructed the jury that it could not convict Rhodes of murder unless the state proved beyond a reasonable doubt the elements of murder, regardless whether Rhodes established by a preponderance of the evidence the mitigating circumstances of sudden passion or sudden rage. The jury was also instructed that, even if it believed the state established the elements of murder beyond a reasonable doubt, it could not convict Rhodes of murder if it found that Rhodes established by a preponderance of the evidence that he acted under the influence of sudden passion or in sudden fit of rage. We cannot say that the instructions bred constitutionally impermissible confusion, nor that they unconstitutionally shifted the burden of proof to Rhodes, and we must reject Rhodes' claim.

The judgment of the district court is AFFIRMED, and Rhodes' petition is DENIED.